[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/07/99
THOMAS K. KAHN
CLERK

_____

No. 98-3404

_____

D. C. Docket No. 96-2555-CIV-T-17

TERRY G. ZILLYETTE,

Plaintiff-Appellant,

versus

CAPITAL ONE FINANCIAL CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 7, 1999)**

Before BLACK and BARKETT, Circuit Judges, and GOLD*, District Judge.

_____

* Honorable Alan S. Gold, U.S. District Judge for the Southern District of Florida, sitting by designation.

BARKETT, Circuit Judge:

Appellant Terry Zillyette appeals the district court's grant of summary judgment to Capital One Financial Corp. ("Capital One") on Zillyette's claim that Capital One discriminated against him on the basis of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117. He first claims that the district court erred in holding that his cause of action was time-barred. He also asserts that he presented sufficient evidence to show that Capital One denied him reasonable accommodations and discharged him because of disability, thereby precluding summary judgment. We affirm the district court's conclusion that Zillyette's complaint was time-barred, thus making it unnecessary to address any other issue in this case.

## BACKGROUND

Zillyette began working as a Customer Service Associate for Capital One in Tampa, Florida in July 1995. During the eight months in which he was employed by Capital One, Zillyette missed twenty-five days of work and on five other occasions left work early, in part due to an illness misdiagnosed as diabetes. On January 26, 1996, Zillyette was told that he was HIV+ and given a letter stating that he was suffering from an "immunologic disease" and "needs to be on a regular 8 hour work program as stress is detrimental to him." After considering both the

letter and Zillyette's previous absentee record, his employers decided to terminate him.

On May 10, 1996, Zillyette filed a charge of discrimination with the EEOC, alleging disability discrimination by Capital One. On September 4, 1996, the EEOC sent a certified letter to Zillyette informing him of his right to sue within 90 days. The U.S. Postal Service first attempted to deliver the EEOC's letter on September 5, 1996, but was unsuccessful in this attempt because Zillyette was not at home. The Postal Service agent instead left a standard notice that the letter would be redelivered or could be picked up at the post office. The manager of Customer Service for the Tampa, Florida branch of the United States Postal Service provided in an affidavit that the delivery notice is to be filled out by the carrier and includes, among other things, the sender's name. On September 10, the Postal Service again unsuccessfully attempted to deliver the EEOC letter. The Postal Service agent left a second notice indicating that if Zillyette did not pick up the letter by September 20, it would be returned to sender. Sometime between September 10 and September 20, Zillyette picked up the letter, although it is not clear when during this time he did so.

On December 12, Zillyette filed a *pro se* complaint. The district court granted summary judgment to the defendant, concluding that Zillyette had not filed

suit within 90 days of receipt of the EEOC letter because the 90-day period began to run when the Postal Service first tried to deliver the letter on September 5.[1]  This appeal followed.

## DISCUSSION

It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964.  See 42 U.S.C. § 12117(a).  Under Title VII, in cases where the EEOC does not file suit or obtain a conciliation agreement, the EEOC "shall so notify the person aggrieved and within 90 days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ."  42 U.S.C. § 2000e-5(f)(1).  Zillyette argues that the 90-day period did not begin to run until he picked up the EEOC letter at the post office.

We first had occasion to consider the meaning of this provision of Title VII in Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747 (1976).  In Franks, we explained that "[t]he key word in the statute is 'notify'; the limitations period begins to run upon notification of

---

[1]The district court also found that Zillyette had failed to show that he was a qualified individual with a disability under the ADA and that he was discharged because of his disability.

the aggrieved party. This Court has held that such notification takes place only when 'notice of the failure to obtain voluntary compliance has been sent and received.'" Id. at 404 (quoting Miller v. International Paper Co., 408 F.2d 283, 287 (5th Cir. 1969)). We found that "statutory notification is complete only upon actual receipt of the suit letter," observing that "Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." Id. Applying this principle, we reversed the district court's dismissal of plaintiff's suit based on the fact that the EEOC's notification letter was lost by plaintiff's nine-year old nephew. Id. at 405 ("Where . . . it is shown that the claimant through no fault of his own has failed to receive the suit letter . . ., as in this case, the delivery of the letter to the mailing address cannot be considered to constitute statutory notification.").

In Franks, although the letter was delivered, it was lost by the plaintiff's nephew "through no fault" of the plaintiff. We found these circumstances to constitute an "event[] beyond [the plaintiff's] control," and therefore concluded that the plaintiff could not be considered to have had statutory notice of his right to sue. In Lewis v. Conners Steel Co., 673 F.2d 1240 (11th Cir. 1982), the plaintiff, like that in Franks, also did not receive his right to sue letter. But in Lewis, the

5

plaintiff's own actions may have explained his failure to receive the EEOC's letter, which went to a different address than the one in which the plaintiff resided. We found that plaintiff's suit would be barred if he had failed to "advis[e] the EEOC of address changes or to take reasonable steps to ensure delivery of the notice to his current address, id. at 1243, because "[i]f [the plaintiff] did not contribute that minimum assistance to the process, he should not be heard to complain that he did not receive the letter delivered to the last address known to the EEOC, unless he can show, in the words of Franks, that other 'fortuitous circumstances' or 'events beyond his control' intervened, and that he 'through no fault of his own' failed to receive the suit letter." Id. (quoting Franks, 495 F.2d at 404-05). We remanded for the district court to make factual findings on these questions.

Our disposition of the notice issue in Lewis suggests that the "beyond [the plaintiff's] control" language of Franks implies a minimal responsibility on the part of the plaintiff in the resolution of his or her claims. Specifically, we stated that

> [w]e need not embrace the doctrine of constructive receipt, nor close our eyes to the liberal construction the act is entitled to in order to fashion a fair and reasonable rule for the circumstances of this case. There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory minimum meaningless. *Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute.*

6

Id. at 1242 (emphasis added).  In Lewis, we concluded that it was reasonable to require the plaintiff to shoulder the "*de minimus*" burden of notifying the EEOC of his change of address.  Since *Lewis*, we have continued to approach these issues on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility in resolving their claims without "conditioning a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute."  Franks, 495 F.2d at 404.

For example, in *Law v. Hercules, Inc., 713 F.2d 691 (11th Cir. 1983), and Bell v. Eagle Motor Lines, Inc., 693 F.2d 1086 (11th Cir. 1982)*, we affirmed the dismissal of suits for failure to meet the 90-day filing deadline where the EEOC notification letter was delivered to plaintiff's home and was received by a responsible family member who resided in the home.  See Law, 713 F.2d at 692-93 (dismissing suit on timeliness grounds where plaintiff's seventeen-year-old son picked up the EEOC letter at the post office at the directive of plaintiff's wife and left it on the kitchen table); Bell, 693 F.2d at 1087 (finding 90-day period for filing suit began to run when plaintiff's wife received the letter at their shared place of residence).  These cases, in other words, required plaintiffs to assume the minimal

burden of informing family members of suitable age and discretion[2] that plaintiffs were expecting an important letter related to their pending claim, and that they needed to be alerted immediately following its delivery.  In this way, we have attempted to insure against the possibility of manipulation when the time of receipt is uniquely within the plaintiff's control.  At the same time, we have recognized that when a plaintiff has not known of the receipt of the letter through no fault of his or her own or because of circumstances beyond his or her control, as in Franks, the time must begin to run from the time of actual receipt.[3]

---

[2]Cf. Fed. R. Civ. P. 4(e) (providing in part that process may be served upon individuals within a judicial district of the United States "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein").

[3]Other circuits, faced with this issue, have reached similar results on the basis of similar principles.  In Sousa v. NLRB, 817 F.2d 10 (2d Cir. 1987), for example, the plaintiff received notice of the certified letter from his post office box five days after it was delivered, and immediately retrieved the letter.  The court found "[t]he receipt by [plaintiff] of the notice . . . [to be] the effective date for measuring the [limitations] period [because a] 5-day delay, which included a weekend, is not an unreasonable time for [plaintiff] to have failed to visit the box." Id. at 11.  The court, however, made clear "that unexplained failure to visit a post office box for a long period of time might result in a different conclusion." Id.  See also Hornsby v. United States Postal Service, 787 F.2d 87, 91 (3d Cir. 1986) (rejecting the argument that a postal notice of unsuccessful delivery was sufficient to commence the running of the 90-day limit for filing suit because the form did "not disclose the name or address of the sender nor does it convey any other relevant information; it states simply that an unknown person has mailed a certified letter to the addressee"); Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir. 1993) (holding that "the limitations period is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up" and applying the doctrine of equitable tolling to remedy resulting injustices).  But see id. (finding equitable tolling to be inappropriate in the case at hand because the plaintiff "suspected that the letter about which she had received notice from the Postal Service was a letter from the EEOC").

In this case, if the delivery notice left for Zillyette by the postal service had failed to contain the information that the EEOC was the sender, it would have simply advised him that a letter was waiting for him at the post office, a letter that could have been from anyone. Under these circumstances, the suit letter from the EEOC could not fairly or reasonably be deemed to have been received from the date of the notice, because Zillyette's failure to retrieve the letter would have had no bearing at all on the diligence with which he was pursuing his claim. On the other hand, had the notice identified the EEOC as sender, Zillyette would have had the *de minimus* responsibility to obtain the letter in a timely manner or provide a reasonable explanation as to why this was not done. To hold otherwise would permit him simply to defer the retrieval of the letter and thus to manipulate the 90-day time limit.

Capital One, in support of its motion for Summary Judgment, presented evidence that the Postal Service had made two attempts to deliver the letter and that the form left by the Postal Service included a space for the sender's name, a space which, in the normal course of business, would have been filled in by the Postal Service. Zillyette did not refute this evidence, testifying only that he did not

9

remember if the notice left at his home contained the sender's name or not.[4] We are therefore required to credit the unrebutted evidence that the delivery notice Zillyette received contained the sender's name, and to conclude that Zillyette bore the minimal burden of retrieving the letter in a timely manner following the Postal Service's first attempt to deliver it. This he did not do. We therefore hold that, under the circumstances presented in this case, the district court did not err in ruling that the 90-day filing period had expired.

Since Franks and Lewis, we have continued to approach these issues on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case. In addition, we have continued to require plaintiffs to assume some minimum responsibility in resolving their claims. Taking these considerations into account, we agree with the Second Circuit in Sousa v. N.L.R.B., 817 F.2d 10, 11 (2d Cir. 1987), that a plaintiff is entitled to a reasonable time to pick up the letter upon receipt of a notice of delivery and therefore conclude that a three-day period, analogous to the federal rule governing time for taking action after service by mail, see Fed. R. Civ. P. 6(e), provides an appropriate period for a plaintiff to act to receive an unsuccessfully delivered letter. Providing a three-day period also

---

[4]Zillyette was also unable to testify as to the date when he ultimately retrieved the letter from the post office. Conceivably it could have been retrieved on September 11, the day after the second notice, which would have made his lawsuit untimely even from the date of receipt.

10

provides a clear rule that will enable parties to be aware of when they must act or forfeit their right to sue. Any other hardships to plaintiffs can be accomodated by the equitable tolling rules, which are generally applicable in Title VII actions against both private and government employers. See Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-94 (1982).[5]

This three-day period is of no help to Zillyette, who filed suit 98 days after receipt of the first Postal Service notice. The judgment of the district court is therefore AFFIRMED.

---

[5] Zillyette does not make any argument in this case that he is entitled to equitable estoppel. We thus need not consider the application of equitable estoppel in this case.

11