Edward L. COLLINS, II,
Plaintiff–Appellant,

v.

Robert BENDER; Stephen D'Erchia;
Richard Plunkett, Defendants–
Appellees.

No. 98–15040

United States Court of Appeals,
Ninth Circuit.

Submitted Friday, July 16, 1999

Filed Oct. 28, 1999

Carlton L. Briggs, Santa Rosa, California, for the plaintiff-appellant.

Patricia J. Kenney, Assistant United States Attorney, San Francisco, California, for the defendants-appellees.

Before: WIGGINS, FERNANDEZ, and THOMAS, Circuit Judges.

WIGGINS, Circuit Judge:

Edward Collins, a former DEA agent, filed a *Bivens*[1] action against fellow DEA agents after the agents, without a warrant, searched Collins' home and seized his personal firearms. The district court held that the Civil Service Reform Act ("CSRA") (codified in various sections of 5 U.S.C.) precluded Collins' *Bivens* action, and the court dismissed it. We reverse.

## FACTS

In February 1994, DEA agent Edward Collins was placed on administrative leave because of numerous allegations of serious, sometimes dangerous, misconduct.[2] While Collins' supervisor was notifying Collins of the administrative leave decision, other DEA agents removed Collins' DEA credentials and official firearm from his desk. After Collins was placed on administrative leave, his supervisor, Robert Bender, ordered two other DEA agents, Stephen D'Erchia and Richard Plunkett, to go to Collins' house and retrieve all government property and Collins' personal firearms. To retrieve Collins' firearms, D'Erchia and Plunkett searched Collins' home.[3] Collins claims that he never gave his consent to the search, but that he allowed the agents to conduct the search after they handled their firearms in a threatening manner and told him that Bender demanded that they retrieve the weapons. According to Collins' complaint, the agents then engaged in various unconstitutional actions to prevent Collins from reporting their illegal activities.[4] Collins was eventually terminated.

## DISCUSSION

Courts can hear constitutional tort claims against federal officials in their individual capacities if Congress has not foreclosed a remedy for the constitutional violation and if there are no special factors counseling hesitation in the absence of affirmative action by Congress. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 396–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). But the Supreme Court "respond[s] cautiously to suggestions that *Bivens* remedies be extended into new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). " 'When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration,' the Supreme Court has not created additional *Bivens* remedies." *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir.1999) (quoting *Chilicky*, 487 U.S. at 423, 108 S.Ct. 2460). Judicial deference is particularly appropriate in the realm of federal personnel policy. Because Congress "is far more competent than the Judiciary to

1. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. According to the Non–Drug Custodian, Collins pointed and cocked a pistol at the back of her head, and two female law enforcement officers claimed that Collins was stalking them.

3. According to Collins' First Amended Complaint ("Complaint") and the Joint Statement of Undisputed Facts ("Statement"), the agents seized Collins' weapons on the same trip in which they seized Collins' government vehicle. *See* Complaint at ¶¶ 6 & 7; Statement at ¶¶ 7 & 8. But Collins' affidavit and opening brief on appeal seem to contradict this set of facts by claiming that the agents conducted two separate searches. This discrepancy, however, is irrelevant to our analysis.

4. Collins does not discuss these assertions in the fact section of his brief. Because these assertions are irrelevant to our decision, we ignore Collins' oversight.

carry out the necessary 'balancing [of] governmental efficiency and the rights of employees,'" the Court defers to Congress' judgment regarding the proper remedy for unconstitutional federal personnel actions. *Chilicky,* 487 U.S. at 423, 108 S.Ct. 2460 (quoting *Bush v. Lucas,* 462 U.S. 367, 389, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)).

■ Congress created the framework for federal personnel policy in the CSRA. "The CSRA contains an 'elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations.'" *Blankenship,* 176 F.3d at 1195 (quoting *Bush,* 462 U.S. at 388, 103 S.Ct. 2404). When allegedly unconstitutional conduct falls within the broad confines of the CSRA, courts lack jurisdiction to hear a *Bivens* action based on the conduct. *See Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991).

■ Collins claims that appellees violated his rights under the United States Constitution by searching his home without consent, by depriving him of his firearms, and by attempting to prevent him from reporting these illegal activities. The district court dismissed Collins' *Bivens* claims, holding that it lacked subject matter jurisdiction. According to the district court, Collins' allegations, if true, would establish that appellees committed a "prohibited personnel practice" under the CSRA, precluding any *Bivens* action. We review the district court's dismissal for lack of subject matter jurisdiction de novo. *See Crist v. Leippe,* 138 F.3d 801, 803 (9th Cir.1998).

Under the CSRA, "prohibited personnel practices" include the taking of a "personnel action" that violates merit system principles. 5 U.S.C. § 2302(b)(11); *see also Saul,* 928 F.2d at 833. "The merit system principles include treating employees fairly and equitably, 'with proper regard for their privacy and constitutional rights.'" *Saul,* 928 F.2d at 833 (quoting 5 U.S.C. § 2301(b)(2)). The question before the panel, then, is whether appellees' actions constituted "personnel actions" as defined in the CSRA. If so, the CSRA applies to

appellees' conduct, and the CSRA procedures, not the federal courts, will determine what remedy, if any, is available to vindicate Collins' constitutional rights.

The CSRA defines "'personnel action' as including 'disciplinary or corrective action.'" *Saul,* 928 F.2d at 833 (quoting 5 U.S.C. 2302(a)(2)(A)(iii)). In *Bush v. Lucas,* the Supreme Court noted that there are limits to the types of actions that can be considered "personnel actions" under the CSRA: "[C]ertain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions'" under the CSRA. *Bush v. Lucas,* 462 U.S. 367, 386 n. 28, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). But despite the *Bush* footnote, the *Saul* court took an expansive reading of the phrase "personnel action." In *Saul,* a federal employee sued his supervisors for, inter alia, "seizing and opening personal mail addressed to him at the office, thereby violating his constitutional rights and invading his privacy." *Saul,* 928 F.2d at 829. The court held that "[t]he term 'corrective action' [which is a subset of 'personnel action] can be read broadly enough to encompass the mail opening before us.'" *Id.* at 834. The court decided that the *Bush* footnote did not preclude its holding because "the footnote was [not] meant to decide whether every allegation that a supervisor has subjected a federal employee to a warrantless search is barred from appeal under the CSRA. Read in context, the footnote indicates only that CSRA remedies, while comprehensive, are not infinitely so." *Id.* at 839.

Of course, *Saul's* statement that not all warrantless searches fall outside of the CSRA certainly does not mean that all warrantless searches by supervisors fall within the CSRA. The issue, as the *Saul* court framed it, is whether the particular search is a "personnel action" as defined by the CSRA. In *Saul,* this court held that the term "corrective action" could be read broadly enough to encompass the search of

the employee's private mail at the office. *Id.* at 834. The *Saul* court did not clearly articulate the reasoning that led to this conclusion. As a result, *Saul* makes clear that some warrantless searches can qualify as "personnel actions" under the CSRA, but *Saul* is of little help in determining whether the search of Collins'_home falls within the CSRA.

■ Collins concedes that the issue before the court is whether the search of his home was, like the search in *Saul,* a "personnel action," which would place it under the purview of the CSRA. But Collins argues that the search of his home was not a "personnel action" because no actions outside the workplace, let alone a warrantless search and seizure and uncompensated taking in the employee's home, so qualifies. Collins, therefore, seems to argue that the location of this action alone determines whether the action is a "personnel action." We disagree. The fact that agents searched Collins' *home* is an important factor in our decision, but location alone is insufficient to determine whether an action is a "personnel action." It is true that "personnel actions" rarely take place "outside the workplace." We would expect this as most business is conducted inside the workplace. But the scarcity of examples of "personnel actions" outside of the office does not mean that conduct outside the office necessarily falls outside the definition of "personnel action." If, for example, a supervisor fired a federal employee because of racial animus, it should not matter whether the firing took place in the office, over dinner, or at the employee's home. Conversely, if a supervisor engages in truly reprehensible conduct in the workplace that is unrelated to conditions of employment, the supervisor has not engaged in any "personnel action." *See Brock v. United States,* 64 F.3d 1421, 1425 (9th Cir.1995) (Rape and physical abuse of an employee during an overnight field outing did not constitute "personnel action.").

■ Collins' second argument for reversal is a curious one. Collins argues that

Congress, even if it wanted, could not preclude his *Bivens* action because it did not leave him with any relief for the appellees' invasion of his home. Collins' argument is long on flowery language and short on substance. First, Collins has not established that he is without any relief absent this *Bivens* action. He has simply ignored the district court's query regarding potential CSRA remedies, and he has ignored the defendants' argument that the CSRA provides Collins with potential remedies. Nevertheless, we too will ignore the availability of CSRA remedies because Collins' argument suffers from a more fatal defect. Whatever the merits of Collins' philosophical musings on the sanctity of the home, Collins' argument lacks a legal foundation. This court has already held that the CSRA can preclude *Bivens* actions even where the CSRA does not provide an alternative remedy. *See Saul,* 928 F.2d at 840. Therefore, even if no remedy were available to Collins under the CSRA, he still could not bring a *Bivens* action if the acts complained of fell within the CSRA's confines.

■ Our dissatisfaction with Collins' arguments is not an endorsement of the defendants' arguments. The defendants claim that the search of Collins' home was a "personnel action" in that it was related to Collins' placement on administrative leave and subsequent termination. We disagree. Any connection between the defendants' search and Collins' employment was, at best, attenuated. The agents searched not in the workplace but in Collins' home. They searched not for government property but for private property, and they still have made no showing how Collins' private property was related to his employment. Presumably, the only difference between Collins' privately owned firearms and his other possessions, for example his television or his microwave oven, was the ability of the firearms to do harm. Thus, as we understand the defendants' argument, the term "personnel action" encompasses any actions taken by a govern-

ment supervisor to insure that recently disciplined or terminated employees do not lash out and harm supervisors, co-workers, or themselves. But if the term "personnel action" encompasses the taking of an employee's firearms, would it not also encompass the taking of the employee's softball bat, kitchen knives, and rat poison? All of these items could, themselves, make powerful implements for revenge. And if Bender, as he asserts, acted to preserve Collins' well-being, would "personnel action" not allow for the retrieval of Collins' belt and shoelaces in addition to his guns? The defendants' interpretation of "personnel action" would seem to encompass all of these measures.

We do not believe that "personnel action" can be defined so broadly. Congress intended for the CSRA to be the sole mechanism through which employment disputes are settled. *See Saul*, 928 F.2d at 833. But we do not believe that Congress intended to deputize government supervisors as chieftains of security forces that police the private lives of their employees subject only to some administrative oversight, and we do not believe that Congress meant to shoehorn into the CSRA every odd occurrence where a supervisor forms and leads such a renegade posse. Where the only connection between a supervisor's illegal search of a government worker's residence and that worker's employment is the supervisor's hunch that the worker may be dangerous, the search is too attenuated from the worker's employment to be considered a personnel action. Therefore, the search of Collins' home was not a "personnel action" under the CSRA, and the district court's dismissal of Collins' claims was improper.

REVERSED.