Dorothy J. LEONARD, Plaintiff,

v.

Donald H. RUMSFELD, Secretary of Defense,[1] et al., Defendants.

No. Civ.A. 99–W–681–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 6, 2001.

---

**36.** Castile's Dep. at 176–77.

**37.** Resp. at 7–8, 26–27.

**1.** Donald Rumsfeld was sworn in as Secretary of Defense on January 20, 2001. He is substituted in this action in place of defendant William S. Cohen, former Secretary of Defense, pursuant to Fed.R.Civ.P. 25(d)(1).

David George Flack, Montgomery, AL, for plaintiff.

Julia J. Weller, for defendant.

## MEMORANDUM OF OPINION

WALKER, United States Magistrate Judge.

Plaintiff Dorothy Leonard brings this action against the Secretary of Defense, in his official capacity, and against defendants Harris, Montgomery, Royal and Nobles in their official and individual capacities. Harris, Montgomery, Royal and Nobles are the Store Manager, Commissary Officer, Meat Market Manager, and Meat Counter Manager, respectively, of the commissary at the Gunter Annex of Maxwell Air Force Base, Alabama. Rumsfeld is sued as the appropriate agency head in an action against the United States Defense Commissary Agency ("DeCA"). Plaintiff, at all times relevant to the complaint, was employed as a meat cutter at the Gunter commissary. (Complaint, ¶¶ 4–9).

Plaintiff alleges the following:

Under agency regulations, chicken was not to be sold by the commissary meat department after its "due date." Instead, the chicken was to be returned to the vendor, and the commissary credited with the purchase price of the outdated chicken. Defendants Montgomery, Royal, Harris, and Nobles made agreements with chicken vendors that the chicken would not be returned to the vendor but would, instead, be disposed of by the commissary. How-

ever, instead of disposing of the out of date chicken, defendants froze the chicken and either used it themselves or sold it.

In August 1997, defendant Nobles, Meat Counter Manager, told plaintiff to "write off" certain boxes of outdated chicken for credit and to freeze the chicken. Plaintiff did so. Shortly thereafter, plaintiff received a call from a customer regarding the purchase of marked down chicken. Plaintiff advised Nobles of the request, and Nobles authorized plaintiff to mark down the chicken for the customer. Plaintiff did so at a rate of 50% of the value stated on the boxes. When the customer did not appear at the time set to purchase the chicken, plaintiff offered the chicken to Jeanette Hooks, a contract manager of the commissary deli, who was then shopping in the commissary. Plaintiff helped Hooks load the chicken onto her cart, then left work. After Hooks proceeded through the commissary checkout, defendant Montgomery followed Hooks out of the store and accused her of theft. Hooks, who is black, stated that Montgomery was making the allegation based on race. Montgomery called the military police and took the boxes of chicken back into the commissary. Montgomery ordered that the boxes be opened and that the items be "rung up" according to the price marked on the chicken. Plaintiff alleges that Montgomery did so in order to terminate Hooks from her position because of her race and to promote a white employee into Hooks' position.

Observing the commotion, plaintiff came forward and told Montgomery that Nobles had authorized the mark-down of the chicken. Montgomery immediately accused plaintiff of theft. Plaintiff asserts that Montgomery knew that the outdated chicken was without value, but that she falsely reported to the military police that the value of the chicken exceeded the amount paid by Hooks. Plaintiff contends

that Montgomery did so in order to "cover up" the activities of defendants and to terminate Hooks to promote a white employee.

The military police placed plaintiff in temporary custody and sought to question her. Plaintiff refused to answer questions until she consulted an attorney. The military police banned plaintiff and Hooks from the base pending their investigation. Plaintiff contacted Nobles, who confirmed to her that he had authorized the markdown. The next day, however, Nobles filed a statement to the contrary against plaintiff.

From August 16 to August 21, 1997, Montgomery "brought charges" against plaintiff for not reporting to work, despite her knowledge that plaintiff had been banned from the base pursuant to Montgomery's false accusation. On August 22, 1997, defendant Royal notified plaintiff to report to work. On October 7, 1997, at a hearing on the order banning plaintiff from the base, plaintiff produced a tape recording of her conversation with Nobles. The ban was lifted, and the criminal investigation of plaintiff and Hooks ended.

The following day, defendant Royal recommended that plaintiff be suspended for 14 days, the maximum punishment that could be imposed without review by the Civil Service Commission. According to plaintiff, Royal was aware of "the racial discrimination in the case" and that the charges were false, and Royal recommended the suspension because of plaintiff's race. Royal did not recommend any disciplinary action against Nobles. Defendant Harris ordered the recommended suspension. Plaintiff alleges that Harris did so because of her race, and despite his knowledge that Royal, Montgomery, and Nobles—all white employees—had committed similar violations previously.

In December 1998, Nobles informed plaintiff that he could no longer work for her because of her actions in tape recording him and presenting the tape at the August 1997 hearing. In January 1999, Nobles gave plaintiff a low evaluation. Plaintiff complained to both the local EEO investigator and the union representative, who both discussed the matter with Montgomery. Plaintiff contends that Nobles' action was retaliatory and that no action was taken to stop the retaliation.

On April 14, 1999, Royal informed plaintiff that she was being transferred because of the chicken incident and that he was "switching her out" with a white employee. Harris, Royal and Nobles transferred a white employee from Maxwell Air Force Base to replace plaintiff. At the time plaintiff was notified of the transfer, the white employee was on bond on charges of sexual abuse. At the time of the actual transfer, the employee's bond had been revoked and he was in the Autauga County jail and not able to return to work. Plaintiff contends that the transfer was in retaliation for her actions in protesting racial discrimination and in taking lawful action to protect her rights under the First, Fourth, Fifth and Sixth Amendments.

In Count I of her complaint, plaintiff asserts that defendants' actions denied plaintiff her rights under the First, Fourth, Fifth, Sixth and Ninth Amendments. In Count III, she claims that defendants' actions in lowering her evaluation and transferring her were in retaliation for her assertion of her rights under the First, Fourth, Fifth and Sixth Amendments. In Counts II and IV, plaintiff brings Title VII race discrimination and retaliation claims.

### Bivens Claims[2]

■ Defendants argue that plaintiff's constitutional claims against them in their

---

**2.** In *Bivens v. Six Unknown Named Agents of*     *the Federal Bureau of Narcotics,* 403 U.S. 388,

official capacities are due to be dismissed because a *Bivens* action may not be maintained against a federal agency, but is limited to suits against individual federal employees. (Defendants' initial brief, p. 8). Plaintiff apparently concedes this point. *See* Plaintiff's response to motion to dismiss, p. 22 ("As in [*Bivens*], it is damages against the individual defendants or nothing."). The court agrees that plaintiff may not maintain his *Bivens* claims against the official capacity defendants, regardless of the factual bases for the claims. *See FDIC v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Boda v. United States*, 698 F.2d 1174 (11th Cir. 1983).

■ Further, to the extent plaintiff's constitutional claims seek relief for race discrimination or for retaliation prohibited by Title VII, they are due to be dismissed as to all defendants in their individual, as well as in their official, capacities. In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. 1961. *See also Canino v. EEOC*, 707 F.2d 468, 472 (11th Cir.1983) (*Brown* holding extends to claims of retaliation) (citing *Porter v. Adams*, 639 F.2d 273, 278 (5th Cir.1981)); *Newbold v. United States Postal Service*, 614 F.2d 46 (5th Cir.1980) (*Brown* rationale applicable to individual capacity defendants). Plaintiff concedes that, insofar as her claims pertain to personnel actions taken against her by the defendants due to her race, Title VII

preempts her *Bivens* claims. (Plaintiff's brief, Doc. # 22, p. 24).

■ Plaintiff argues, however, that she may maintain her constitutional claims to the extent that they arise from any "non-personnel actions" of the defendants, whether or not those actions were motivated by race, and from personnel actions taken against her in retaliation for exercising her constitutional rights. Plaintiff contends that "it is not a *personnel action* ... when [a]supervisor makes false allegations of a crime against an off duty federal employee because the employee peacefully came forward to inform third party government officials that the accusations being made by the supervisor against a third party are false, resulting in the off work employee being held in custody and being barred from her place of employment by the base commander." *Id.* at pp. 23–24 (emphasis in original); *see also id.* at pp. 21–22 ("[S]upervisors instigating the false arrest of an off work employee for larceny from the place of employment because of the race of the employee and seeking barment of the employee by a third party from her place of employment by a third party because of the race of the employee is not a *personnel action* and is a highly personal attack on the employee for which there [is] no remedy under Title VII.").

However, the plaintiff's constitutional claims against defendants in their individual capacity are barred by the doctrine set forth in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), in which the Supreme Court, because of the comprehensive civil service remedial system established by Congress for federal em-

91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a cause of action for monetary damages against federal officials for a violation of constitutional rights. Plaintiff asserts that her constitutional claims are brought pursuant to "Federal Case Law which provides for a remedy where Federal

Official[s] violate the Constitutional Rights of a citizen of the United States ([*Bivens*] action)." (Complaint, p. 1). Plaintiff apparently seeks damages against the individual defendants pursuant to *Bivens* and damages and injunctive relief pursuant to Title VII.

ployees, refused to imply a *Bivens* remedy in favor of a federal employee who sought to recover damages from his superior for violation of his First Amendment rights.

The [*Bush*] Court declined to conclude that the Constitution supports a private cause of action in cases in which the plaintiff's claim for relief arises out of an employment relationship governed by procedural and substantive administrative provisions that establish an effective remedy for constitutional violations by the government. The *Bush* analysis has been applied to Fifth Amendment claims as well as First Amendment claims.

The *Bush* decision was based on a careful analysis of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* and its progeny, cases in which the Supreme Court held that the Constitution provided a cause of action for damages against federal officials. The *Bivens* line of cases confers "adequate power to award damages to the victim of a constitutional violation," except when Congress establishes an alternative remedy and indicates, either explicitly or implicitly, "that the Court's power should not be exercised." Without such an indication from Congress, the federal courts must fashion damage remedies for constitutional violations as would any common law court, "paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

The special factor in *Bush* that counselled hesitation was the plaintiff's employment relationship with the federal government, which was governed by a comprehensive remedial scheme: the federal civil service laws.

*McCollum v. Bolger,* 794 F.2d 602, 606–07 (11th Cir.1986) (footnotes omitted).

Plaintiff argues that—as to her claim that defendants retaliated against her for exercising her First Amendment rights by imposing an eight-day suspension and placing derogatory material in her personnel file—there is no remedy under the Civil Service Reform Act and, therefore, she may maintain her *Bivens* claim. (Plaintiff's brief, pp. 25–26). This argument is clearly without merit. In *Lee v. Hughes,* 145 F.3d 1272, 1275 (11th Cir. 1998), the Eleventh Circuit was faced with the issue of "whether a federal employee for whom the CSRA provides *no* administrative or judicial review for adverse personnel actions can assert a *Bivens* claim for monetary damages against individual defendants who allegedly have violated the complainant's constitutional rights." The plaintiff in *Lee* had no right to appeal the challenged action through the Merit Systems Protection Board because of his status as a preference-eligible member of the excepted services. *Id.* at 1274. In holding that the plaintiff nevertheless had no *Bivens* remedy, the court relied on the comprehensive nature of the CSRA and the conclusion of the Supreme Court that "the exclusion of certain employees from judicial review of adverse personnel decisions reflects 'manifestation of a considered congressional judgment.'" *Id.* at 1277 (quoting *Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991)). Plaintiff argues that, under the CSRA, there is no remedy for a suspension of fourteen days or less. (Plaintiff's brief, p. 26). The court concludes that the CSRA provisions precluding Merit Systems Protection Board review of suspensions of fourteen days or less likewise reflects a "manifestation of a considered congressional judgment," and that the non-availability of such review does not entitle plaintiff to maintain her *Bivens* claims. *See Lee, supra; see also Stephens v. Department of Health and Human Services,* 901 F.2d 1571, 1576–77 (11th Cir.1990) (disallowing *Bivens* claims for retaliation in violation of the First

Amendment and violation of due process and equal protection under the Fifth Amendment for preference-eligible federal employee); *see also Pinar v. Dole,* 747 F.2d 899 (4th Cir.1984).

As noted above, plaintiff also argues that "it is not a *personnel action* ... when [a] supervisor makes false allegations of a crime against an off duty federal employee because the employee peacefully came forward to inform third party government officials that the accusations being made by the supervisor against a third party are false, resulting in the off work employee being held in custody and being barred from her place of employment by the base commander." Thus, plaintiff contends, her claim based on such action is not precluded by *Bush.* (Plaintiff's brief at pp. 23–24) (emphasis in original). In support of this argument, plaintiff cites a footnote in *Bush* in which the Supreme Court stated:

> "Not all personnel actions are covered by [the CSRA]. For example, there are no provisions for appeal of either suspensions for 14 days or less, 5 U.S.C. § 7503 (Supp. V 1981), or adverse actions against probationary employees, § 7511. In addition, certain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme."

*Bush,* 462 U.S. at 385 n. 28, 103 S.Ct. 2404.

The court recognizes that there are situations in which a federal official's actions with respect to an employee lack a sufficient nexus with the employment to constitute a personnel action. For example, in *Collins v. Bender,* 195 F.3d 1076 (9th Cir. 1999), the plaintiff, a DEA agent, was placed on administrative leave because of a numerous allegations of serious misconduct, including allegations that he pointed a cocked a pistol at the back of the head of a co-employee, and that he stalked two female law enforcement officers. Plaintiff's supervisor ordered two other DEA agents to go to plaintiff's house and retrieve all government property and plaintiff's personal firearms. The agents did so, searching plaintiff's home in the process. Plaintiff filed a *Bivens* action against the agents, claiming that the warrantless search was unlawful. *Id.* at 1077, 1077 n. 2. The Ninth Circuit concluded that plaintiff could maintain his *Bivens* action, finding that "[a]ny connection between the defendants' search and [plaintiff's] employment was, at best, attenuated." *Id.* at 1079. The court noted that the agents searched the plaintiff's home, as opposed to his workplace, and that they searched for private property. The court stated, "Where the only connection between a supervisor's illegal search of a government worker's residence and that worker's employment is the supervisor's hunch that the worker may be dangerous, the search is too attenuated from the worker's employment to be considered a personnel action." *Id.* at 1080.

The Eleventh Circuit has, however, interpreted the holding of *Bush* broadly, so as to preclude an employee's constitutional claims against her supervisors which included allegations, *inter alia,* of unspecified "harassment" in retaliation for filing a grievance against her employer. *Hallock v. Moses,* 731 F.2d 754 (11th Cir.1984); *see also Stephens v. Department of Health and Human Services,* 901 F.2d 1571, 1577 (11th Cir.1990) ("[T]his court has recognized that the comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related *Bivens* actions by federal employees."). Here, plaintiff alleges that defendant Montgomery—in order to terminate Hooks from her position in favor of a white employee and to cover up the actions of Montgomery and other white employees—accused plaintiff of theft and made false claims to the mili-

tary police that the value of the chicken exceeded the price paid by Hooks. (Complaint, ¶ 22). Plaintiff further alleges that, as a result, she was detained by the military police and banned from the Air Force base pending further investigation. (*Id.*, ¶ 23). The false accusation formed the basis of a subsequent disciplinary action against plaintiff. (*Id.*, ¶¶ 29, 30).

The court concludes that the conduct alleged by plaintiff in the present case falls within the purview of the CSRA and, thus, that she may not maintain her *Bivens* claims. The CSRA defines "prohibited personnel practices" broadly. Such practices include taking a "personnel action" which violates any law directly concerning the merit system principles contained in 5 U.S.C. § 2301. 5 U.S.C. § 2302(b)(12). One of the merit system principles listed in section 2301 is that "[a]ll employees ... should receive fair and equitable treatment in all aspects of personnel management ... with proper regard for their constitutional rights." 5 U.S.C. § 2301(b)(2). "The CSRA makes a 'personnel action' an element of a prohibited personnel practice. 5 U.S.C. § 2302. It defines 'personnel action' as including 'disciplinary or corrective action,' *id.* § 2302(a)(2)(A)(iii), but it provides no definitions for these latter terms." *Saul v. United States*, 928 F.2d 829, 833 (9th Cir.1991). Citing the legislative history of the CSRA, the *Saul* court noted that "Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional and privacy rights." *Id.* at 834 (citing H.R.Conf.Rep. No. 95–1717 (1978), 1978 U.S.Code Cong. & Admin.News 2860, 2863). The court read the term "corrective action" broadly, to include an employee's allegation that his supervisor had violated his constitutional rights by opening personal mail addressed to the employee at the office. It further held that the term encompassed plaintiff's allegation that a supervisor had defamed him in a telephone call the supervisor placed to a congressional aide to offer the employer's position on issues plaintiff had raised in a letter to the Congressman, and in a letter the supervisor wrote to the employee's union explaining his decision on grievances pertaining to the employee. *Id.*

According to the present complaint, Montgomery falsely accused plaintiff of stealing from her employer. The accusation pertained to actions allegedly taken by plaintiff while she was on duty. Unlike the situation in *Collins, supra*, plaintiff's allegations relate to conduct which bears a direct relationship with her employment. In the view of the court, a supervisor's conduct in accusing a subordinate employee of theft from the employer is fairly encompassed within the term "corrective action" and, assuming the accusation was false and motivated by race, as plaintiff alleges, it violates merit principles set forth in the CSRA. *See Saul, supra*, 928 F.2d at 833–34; *Spagnola v. Mathis*, 859 F.2d 223, 225 n. 2 (D.C.Cir.1988); *see also Hall v. Clinton*, 235 F.3d 202, 205 (4th Cir.2000) (plaintiff's due process claim against White House officials for transmitting false, disparaging memoranda about plaintiff to First Lady and other officials barred by CSRA because claims "arose out of her federal employment relationship."); *Zimbelman v. Savage*, 228 F.3d 367, 370–71 (4th Cir.2000) (plaintiff indicted on criminal charges because of employer's allegation of theft and subsequently acquitted could not maintain her *Bivens* claim based on failure of employer to provide her a "name-clearing hearing," despite the fact that the CSRA provided no remedy to plaintiff); *Weber v. Named Federal Officials*, 68 F.3d 479, 1995 WL 564523, * 1 (8th Cir.1995) (unpublished opinion) (plaintiff's *Bivens* claims for arrest lacking probable cause and false prosecution precluded by CSRA because the conduct at issue "occurred in the course of escorting [plaintiff] from the premises upon his termi-

nation and determining whether [plaintiff] disclosed classified information he acquired during his employment."). The fact that the conduct alleged occurred as plaintiff was leaving the Commissary premises and while she was "off the clock" does not change the court's conclusion that plaintiff may not maintain her *Bivens* claims. *See Collins, supra,* 195 F.3d at 1079 ("It is true that 'personnel actions' rarely take place 'outside the workplace.' We would expect this as most business is conducted inside the workplace. But the scarcity of examples of 'personnel actions' outside of the office does not mean that conduct outside the office necessarily falls outside the definition of 'personnel action.' If, for example, a supervisor filed a federal employee because of racial animus, it should not matter whether the firing took place in the office, over dinner, or at the employee's home.").

Thus, all of plaintiff's *Bivens* claims are due to be dismissed, either as preempted by Title VII under the authority of *Brown, supra,* or as precluded by the CSRA under the authority of *Bush* and its progeny.

## Title VII Claims

### *Individual Defendants*

The individual defendants correctly maintain that plaintiff may not maintain her Title VII claim against them. "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991). Plaintiff's Title VII claims against the individual capacity defendants will, accordingly, be dismissed.

### *Race Discrimination Claims*

■ Defendants contend that plaintiff's Title VII race discrimination claims are due to be dismissed as untimely. A federal employee may commence a Title VII civil action "[w]ithin 90 days of receipt of notice of final action taken by a[n] ... agency...." 42 U.S.C. § 2000e–16. It is undisputed that plaintiff received the final agency decision regarding her discrimination complaint in November 1998. (*See* Leonard aff., 11/28/99, p. 2 and attachment). Plaintiff states that she received the decision by regular mail. She further states that she received "a letter" by certified mail around the same time.[3] Plaintiff has submitted evidence that the final agency decision was not mailed to her attorney. (Flack aff.; *see also* Smith aff.). Plaintiff's complaint was filed in this court on July 2, 1999, nearly eight months after she received the final agency decision. Plaintiff contends that this action is timely either because the ninety-day period did not begin to run until her attorney was served with the decision or because the statutory period should be equitably tolled.

Defendants have introduced evidence that on April 6, 1998, plaintiff signed a "Designation of Representative" form requesting that all correspondence be sent to plaintiff with a copy to her attorney. In paragraph 1 of the form, plaintiff filled in the name, address and telephone number of her attorney. In paragraph 2, the form states:

> In accordance with 29 CFR Section 1614.605(d), unless the complainant states otherwise in writing, after the agency has received written notice of the name address and telephone number of a representative for the complainant, **all official correspondence shall be with the representative** with copies to the complainant. When the complainant

---

**3.** In her affidavit, plaintiff does not state whether this "letter" was the final agency decision.

designates an attorney as representative, service of documents and **decisions on the complainant [sic] shall be made on the attorney and not on the complainant,** and time frames for receipt of materials by the complainant shall be computed from the time of receipt by the attorney.

_____ I request all correspondence be sent to me and a copy to my attorney.

_____ I request all correspondence be sent to my attorney.

(Defendant's Exhibit G, para 2) (emphasis in original). Plaintiff checked the sentence indicating that she requested that all correspondence be sent to her and a copy to her attorney. (_Id._).

Plaintiff has filed an affidavit stating that this form was completed outside the presence of her attorney. She states:

On Monday, April 6, 1998, I hand delivered the formal complaint to Ms. Kitty Combs, Chief EEO Counselor, as per the statement of March 20, 1998 (Attachment # 1). She asked me to fill out some paper work. One of the forms was the Designation of Representative (Attachment # 2). I had previously signed a similar form which stated that I did not have a representative (Attachment # 3). The only explanation, I received was that the form was necessary to show that I now had an Attorney. I did not interpret it as waiving any of my rights or changing the status of my Attorney in the proceedings. My attorney was not present and I was only there to file the complaint in a timely fashion.

(Leonard aff., Jan. 10, 2000). Plaintiff also states that she has no legal experience, that she and her child had medical problems in most of 1998 and 1999, and that she was on pain medication before and after a December 3, 1998 surgery. (Leonard aff., Nov. 29, 1999).

The Eleventh Circuit has adopted a "case-by-case approach" in determining what constitutes "receipt" sufficient to trigger the ninety-day limitations period. _See Stallworth v. Wells Fargo Armored Services Corp.,_ 936 F.2d 522, 524 (11th Cir.1991). In _Stallworth,_ the court determined that the ninety-day time period of 42 U.S.C. § 2000e–5(f)(1) had not commenced when the right-to-sue notice was delivered to the plaintiff's residence and was not served on her attorney. Plaintiff's 25–year old nephew signed for the notice. However, the plaintiff was temporarily residing elsewhere and never actually received the notice, though she checked for mail at her family home approximately six times during the month the right-to-sue notice was delivered. The EEOC failed to send a copy of the notice to plaintiff's attorney despite a written request to do so and despite guidance in the EEOC Compliance Manual requiring that a copy of the right-to-sue letter be mailed to the claimant's attorney. The district court dismissed plaintiff's Title VII claim as untimely, holding that the ninety-day period began to run when plaintiff's nephew signed for the notice. The Eleventh Circuit reversed the district court's dismissal of the plaintiff's Title VII claim, concluding that "the primary fault for the failed delivery in this case rests upon the EEOC because of its failure to mail a copy of the right-to-sue letter to [plaintiff's] attorney." _Id._ at 525.

In this case, as in _Stallworth,_ the plaintiff signed a written request that her attorney be provided a copy of all correspondence. (Defendant's Exhibit G). Plaintiff has filed evidence that the agency did not send her attorney a copy of the final agency decision. The court nevertheless concludes that the ninety-day statutory period began to run when plaintiff herself received the right-to-sue notice in November 1998. In the present action, in contrast to _Stallworth,_ it is undisputed that plaintiff herself actually received the final agency decision. The final agency decision re-

ceived by plaintiff included an enclosure entitled "Appeal Rights." The notice advised plaintiff of her right to appeal the final agency decision to the EEOC. It further stated, "Instead of an appeal to the EEOC, you can also file a civil action in the proper U.S. District Court within 90 calendar days after receiving this Final Agency Decision...." (*See* attachment to Leonard aff., Nov. 29, 1999). The Eleventh Circuit continues to require that a plaintiff "assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute." *Zillyette v. Capital One Financial Corporation*, 179 F.3d 1337, 1340 (11th Cir.1999) (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240 (11th Cir.1982)). This is not a case in which the court must determine whether the facts justify holding the plaintiff to constructive receipt of the statutory notice. Plaintiff's actual receipt of the final agency decision commenced the running of the ninety-day period set forth in § 2000e–16, despite the agency's failure to provide the notice to plaintiff's attorney.[4] To hold otherwise would be to relieve plaintiff of the Eleventh Circuit's requirement that she assume some minimal responsibility for the resolution of her dispute. *Cf. Lewis, supra,* 673 F.2d at 1243 ("If the plaintiff can establish that it was through no fault of his that the letter was sent to his temporary Birmingham address, then the plaintiff should not be held to a limitation period beginning to run at that time, *unless, in spite of the incorrect address, he actually received the letter.*") (emphasis added); *see also Baker v. Runyon*, 113 F.3d 1245, 1997 WL 235281 (10th Cir.1997) (unpublished opinion) ("While the Postmaster General concedes that he should have mailed the 1994 notice [of right to file

individual complaint] to Mr. Baker's personal representative, he correctly points out that this failure did not excuse Mr. Baker from pursuing his administrative remedies, especially because Mr. Baker had personal notice of his 1994 right to file a complaint and was 'responsible for proceeding with the complaint whether or not he ... [had] designated a representative.'") (quoting 29 C.F.R. 1614.605(e)) (footnote omitted). The present action was commenced nearly eight months after plaintiff received the final agency decision and, thus, was filed well beyond the time period allowed by the statute.

In *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Court held that the time period allowed by § 2000e–16 for a federal employee to commence a civil action in district court is subject to equitable tolling. In the present case, however, plaintiff has not established an adequate basis for equitable tolling of the statutory period.

■ "The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). *Irwin, Browning v. AT & T Paradyne*, 120 F.3d 222, 226–27 (11th Cir.1997), and precedential Fifth Circuit decisions regarding the equitable tolling issue establish that equitable tolling is available if: (1) the statutory notice does not advise the plaintiff of the ninety-day limitations period; and (2) the plaintiff is misled by further communication from the EEOC or agency as to the limitations period.[5] Plaintiff argues that she "relied on the statements

---

4. In view of plaintiff's admission that she received the final agency decision by regular mail, postmarked November 4, 1998, any factual dispute regarding whether she also re-

ceived the decision by certified mail on November 9, 1998 is not material.

5. *See Hefner v. New Orleans Public Service, Inc.*, 605 F.2d 893, 896 (5th Cir.1979); *Page*

made on the Defendant Cohen's 'Designation of Representative' form, not knowing that DeCA as a policy did not serve the designated attorney with the final agency decision...." (Plaintiff's brief, Doc. #29, p. 4). However, plaintiff has filed no evidence that she relied on any statement in the Designation of Representative form with regard to the applicable limitations period. She states only that, "The only explanation, I received was that the form was necessary to show that I now had an Attorney. I did not interpret it as waiving any of my rights or changing the status of my Attorney in the proceedings." (Leonard aff., Jan. 10, 2000, p. 2). Plaintiff's affidavit does not indicate that she was misled by the form as to the limitations period. Even if plaintiff had filed such evidence, she would not be entitled to equitable tolling on this basis, because the final agency decision included a notice of appeal rights which clearly advised plaintiff of her right to "file a civil action in the proper U.S. District Court within 90 calendar days after receiving this Final Agency Decision...." (*See* Final Agency Decision attached to plaintiff's Nov. 29, 1999 affidavit). Whether or not plaintiff read the decision she received in the mail, she is charged with notice of its contents.[6] The court cannot conclude otherwise without ignoring the Eleventh Circuit's requirement, noted above, that plaintiff "assume some minimum responsibility [herself] for

an orderly and expeditious resolution of [her] dispute." *Zillyette, supra.* Thus, plaintiff is not entitled to equitable tolling on the basis of an inadequate notice coupled with misleading communication from the agency.

■ Equitable tolling may also be appropriate where: (1) the plaintiff has filed a defective pleading within the statutory limitations period; (2) a motion for appointment of counsel is pending; (3) the court has led the plaintiff to believe that he has done everything required to preserve his rights; or (4) affirmative misconduct on the part of the defendant caused the plaintiff's delay. *See Irwin,* 498 U.S. at 96, 111 S.Ct. 453; *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Only the latter is potentially implicated in this case. Plaintiff argues, "Considering the facts that DeCA has a policy of notifying the Complainant that service of the final agency decision must be served on her attorney before she can proceed with her EEO complaint and have a policy of not serving the Attorney but sending the Complainant a copy of the Final Agency Decision, the trickery is present and Defendant Cohen is responsible." (Plaintiff's brief, Doc. #29, p. 3). Plaintiff's evidence of this "policy" consists of the facts set forth above with regard to the present case and plaintiff's attorney's affidavit that, in another case in which he

---

*v. U.S. Industries, Inc.,* 556 F.2d 346 (5th Cir.1977); *Zambuto v. American Tel. and Tel. Co.,* 544 F.2d 1333 (5th Cir.1977).

6. In her affidavit, plaintiff states, "I do not remember reading the papers that were in the envelope postmarked November 5, 1999 [the final agency decision]." (Leonard aff., Nov. 29, 1999). She also states that she and her child had medical problems, and that she was on pain medication before and after a December 3, 1998 operation. Plaintiff does not aver that her medical problems or those of her child rendered her unable to read or under-

stand her mail, nor does she describe any other incapacitation. Further, she states that she contacted her attorney "a number of times" in January, after her surgery, regarding filing her lawsuit. Thus, it appears that plaintiff was capable of attending to her lawsuit within the statutory period. Plaintiff's medical problems and those of her child do not render her receipt of the final agency decision ineffective, nor do they provide a basis for equitable tolling. *See Portis v. World Omni Finance,* 2000 WL 726220, *3 (S.D.Ala. May 16, 2000).

represented an individual employed by DeCA, DeCA did not send him a copy of the final agency decision. (Flack aff.). DeCA should have mailed a copy of the final agency decision to plaintiff's attorney and failed to do so. However, even if this error on the part of the agency may be characterized as "affirmative misconduct," it does not present a sufficient basis for equitable tolling, since the plaintiff actually received a copy of the final agency decision and proper notice of the statutory limitations period. *Cf. Santini v. Cleveland Clinic Florida,* 232 F.3d 823 (11th Cir. 2000) (citing *Ball v. Abbott Advertising, Inc.,* 864 F.2d 419, 421 (6th Cir.1988) for the proposition that "[a]ctual notice destroys any possible basis for applying the 'equitable tolling' doctrine.").

Since plaintiff commenced this action outside the period allowed by § 2000e–16 and since the facts of this case do not present a basis for equitable tolling, plaintiff's Title VII race discrimination claims are due to be dismissed.

*Retaliation Claims*

█ In her complaint, plaintiff alleges that: (1) Nobles told plaintiff he could no longer work with her because of her actions in tape recording him and presenting the tape at the hearing regarding her base privileges, (2) he thereafter gave plaintiff a low evaluation, and (3) Nobles, Royal and Harris transferred plaintiff in retaliation for protesting racial discrimination. (Complaint, ¶¶ 31–33). In their motion, defendants argue that these claims are due to be dismissed because plaintiff failed to exhaust administrative remedies. (Motion, Doc. # 17, pp. 12–13). In response, plaintiff does not contend that she exhausted administrative remedies as to these claims.[7] Instead, plaintiff argues that she

was not required to file a second EEO claim for retaliation because her original discrimination complaint was still pending. (Response, Doc. # 22, pp. 30–31). Plaintiff concedes, however, that if her underlying discrimination claims were not "pending" when the retaliation occurred, her retaliation claims are due to be dismissed. *Id.,* p. 31 ("Of course if this Court rules that the Title VII action was not pending at the time … the retaliation arose in this case th[e]n Plaintiff is out. It appears that Defendant's agents will have achieved retaliation without facing consequences because they violated a regulation in not serving the Attorney."). As noted above, plaintiff's EEO complaint was terminated by a final agency decision received by the plaintiff in November 1998. The retaliation of which she complains occurred in December 1998, January 1999 and April 1999. (*See* Complaint, ¶¶ 31–33). Thus, the claims were no longer pending before the agency when the alleged retaliation occurred. Since plaintiff failed to commence the present action in this court within ninety days of receipt of the final agency decision on her underlying discrimination claims, plaintiff's unexhausted retaliation claims are due to be dismissed. *Cf. Hargett v. Valley Federal Savings Bank,* 60 F.3d 754, 761–62 (11th Cir.1995); *Gupta v. East Texas State University,* 654 F.2d 411 (5th Cir. Unit A, 1981); *see also Barrow v. New Orleans Steamship Association,* 932 F.2d 473, 479 (5th Cir.1991) ("Because one of the ADEA charges was untimely and the other was not presented first to the EEOC, they were not 'properly' before the district court. Thus the retaliation charge has no charge on which to attach itself, and the district court correctly dismissed it.").[8]

---

**7.** It does not appear to the court that plaintiff intends to bring discrimination claims based on Nobles' comment, plaintiff's low evaluation and her transfer. To the extent she does,

the claims are due to be dismissed for failure to exhaust administrative remedies.

**8.** The court recognizes that *Hargett, Gupta,* and *Barrow* involved untimely administrative

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendants' motion to dismiss is GRANTED as to plaintiff's *Bivens* claims (Counts I and III of the Complaint) against all defendants, and as to plaintiff's Title VII claims (Counts II and IV) against the individual defendants.

It is further ORDERED that defendants' motion for summary judgment is GRANTED as to the Title VII discrimination and retaliation claims against defendant Rumsfeld and the remaining official capacity defendants.

It is further ORDERED that plaintiff's "Motion to Strike the Report of Department of Defense Investigator and the Final Agency Decision, and the Certified Return Card in the Complaint of Dorothy Leonard," filed November 30, 1999 is GRANTED.[9]

charges, as opposed to claims that were untimely filed with the court. In *Harris v. Secretary of Veterans Affairs*, 126 F.3d 339 (D.C.Cir. 1997), the court reasoned that, since the limitations period of 42 U.S.C. § 2000e–16(c) is not jurisdictional, the court has discretion to exercise supplemental jurisdiction over unexhausted Title VII reprisal claims, even when the underlying discrimination claims are filed with the court beyond the statutory limitations period. This court disagrees with the *Harris* court, as its rule effectively eliminates not only the exhaustion requirement for retaliation claims, but also any statute of limitations for commencing a civil action. *See also Wilson v. Shell Oil Company*, 1995 WL 311911, *3 (E.D.La. May 18, 1995) ("[Plaintiff] attempts to distinguish *Barrow* on the ground that Barrow did not file any timely EEOC claims, while Wilson filed a timely discrimination claim with the EEOC. This ar-

gument misses the point. [Plaintiff] never filed suit concerning his initial claims of discrimination and has lost the opportunity to do so. Therefore, just like Barrow, he has no discrimination claim 'properly before the court' and no discrimination charge to which his retaliation claim can attach.").

9. This ruling pertains only to Exhibits B, C, and D, filed with defendants' motion to dismiss on October 28, 1999. The court notes that the Final Agency Decision and return receipt were subsequently filed by defendants as attachments to the affidavit of Mercedes Smith (*see* Exhibit E to defendants' reply, filed December 9, 1999), and that plaintiff also filed the final agency decision as an attachment to her affidavit (*see* Plaintiff's Exhibit II to plaintiff's response, filed November 30, 1999).