Kathryn I. BLANKENSHIP, Plaintiff–Appellant,

v.

The Honorable Alan A. McDONALD, United States District Court Judge, Eastern District of Washington, personally, and the marital community composed of Alan A. McDonald and Ruby K. McDonald; James R. Larsen,

---

Clerk, United States District Court, Eastern District of Washington, personally, and the marital community composed of James R. Larsen and L. Dianne Emmons, Defendants–Appellees.

No. 97–35898.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1998.

Filed May 14, 1999.

James Lobsenz, Carney, Badley, Smith & Spellman, Seattle, Washington; Victoria L. Vreeland, Gordon, Thomas, Honeywell, Malanca, Peterson & Haheim, Seattle, Washington, for the plaintiff-appellant.

Walter Meyer, Meyer, Fluegge & Tenney, Yakima, Washington; Leslie Weatherhead, Witherspoon, Kelley, Davenport & Toole, Spokane, Washington, for the defendants-appellees.

Robert Loeb and Maria Simon, Attorneys, Department of Justice, Washington, DC, for the amicus.

Before: REAVLEY,[1] LEAVY and McKEOWN, Circuit Judges.

1. The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

LEAVY, Circuit Judge:

This case requires us to decide whether a federal court reporter who has no effective remedies under the Civil Service Reform Act ("CSRA")[2] has an action for money damages, commonly called a *Bivens* action,[3] for alleged constitutional violations in the workplace. The plaintiff, Kathryn Blankenship, appeals the district court's judgment of dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I.

Blankenship filed this action against the defendants, District Court Judge Alan A. McDonald and Court Clerk James Larsen, in their individual capacities. The allegations in the complaint are considered true for purposes of the motion to dismiss and may be summarized as follows:

Blankenship was appointed in 1985 as a court reporter for the United States District Court for the Eastern District of Washington. From 1985 to 1990, she worked in Spokane, Washington, and in 1990, she was transferred to Yakima, Washington in the same district. She worked throughout her employment as the official court reporter for Judge McDonald. James Larsen supervised the court reporters in Spokane and Yakima.

In July 1994, Blankenship was subpoenaed to testify in a former employee's hearing pursuant to a complaint filed under the court's Equal Employment Opportunity ("EEO") plan. Blankenship testified about events and conduct in the Yakima courthouse, particularly involving the conduct of Judge McDonald's in-court clerk, which included abuse of personnel rules, use of court facilities for private business, regular and excessive profanity, and sexist and racist jokes and comments. She also testified that Judge McDonald reviewed her official transcripts prior to

filing, edited and deleted words, required her to change the reports of proceedings, and would not allow her to certify the reports "as amended." She testified that Judge McDonald and his in-court clerk often passed notes which included comments about a litigant, witness, or attorney that were disrespectful and rude.

Immediately following the hearing, James Larsen was observed talking with Judge McDonald outside the courthouse. The next working day, Judge McDonald confronted Blankenship and demanded to know why she had "aired the court's dirty laundry."

James Larsen met Blankenship outside the courthouse and told her that she had three options: (1) to take a voluntary transfer to Spokane to be part of a pool of court reporters; (2) to take permanent medical disability; or (3) to be terminated for poor performance due to a delay in filing a recent transcript. Blankenship exercised none of these options. James Larsen then scheduled a performance review for November 10, 1994. Blankenship did not attend the review and sent a letter to Larsen protesting the review, stating that she should not be punished for bringing judicial improprieties to the court's attention.

In November 1994, Larsen sent a written "performance report" to Blankenship by mail, principally citing Blankenship's failure to meet certain transcript filing deadlines. In December 1994, Larsen wrote Blankenship that she would be transferred to Spokane effective February 1, 1995. Blankenship refused to be transferred to Spokane. On February 1, 1995, Larsen wrote to Blankenship that he planned to recommend her termination. Blankenship responded in writing that the stated reasons for the proposed termination were pretextual. By letter dated

---

**2.** The CSRA is codified and amended in various sections of Title 5, United States Code.

**3.** A *"Bivens* action" is the commonly used phrase describing a judicially created remedy

for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

February 13, 1995, signed by the four then-active district court judges, Blankenship was officially terminated by the court effective March 3, 1995.

In her complaint, filed in February 1997, Blankenship alleged that defendants violated her first and fifth amendment rights, and that these violations caused her injuries for which she should receive money damages. The district court dismissed the complaint for failure to state a claim upon which relief could be granted.

## II.

■ Blankenship, as an appointed judicial employee, is a member of the "excepted service" under the CSRA.[4] Blankenship argues that because she has no administrative or judicial remedies under the CSRA as a member of the excepted service, she is entitled to assert a *Bivens* claim.

In *Bivens,* the Supreme Court held that a plaintiff could state a claim and recover money damages against federal officials for constitutional violations where there are no "special factors counseling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396–97, 91 S.Ct. 1999. "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," the Supreme Court has not created additional *Bivens* remedies. *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Accordingly, we have declined to create a *Bivens* remedy if there are "indications that congressional action has not been inadvertent." *Moore v. Glickman,* 113 F.3d 988, 993 (9th Cir.1997) (quoting *Chilicky,* 487 U.S. at 423, 108 S.Ct. 2460).

The CSRA contains an "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations ..." *Bush v.*

*Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Saul v. United States,* 928 F.2d 829, 840 (9th Cir.1991), we stated:

"The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights. In the area of federal employment, Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."

Because congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees, we hold that the CSRA precludes a *Bivens* remedy in this case. *Accord Lee v. Hughes,* 145 F.3d 1272, 1275 (11th Cir. 1998). Congress has given judicial employees certain employment benefits and remedies, such as back pay, severance pay, family and medical leave, and health and retirement benefits. Congress has withheld other benefits and remedies, such as review of adverse personnel decisions. This demonstrates that the lack of more complete remedies was not inadvertent. *See Moore,* 113 F.3d at 992; *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir.1989).

## III.

■ Blankenship's complaint also alleged state tort claims for intentional infliction of emotional distress. Blankenship's state claims are preempted by the CSRA. Preemption is necessary because "[b]oth the CSRA and its legislative history show that Congress did not intend that state tort law operate within the interstices of the act." *Saul v. United States,*

---

4. "Civil service" consists of all appointive positions, including those in the judicial branch, 5 U.S.C. § 2101; court reporters are appointed under 28 U.S.C. § 753(a); "civil service" includes those in "excepted service" under 5 U.S.C. § 2103, which includes everyone who is not in the two other categories of civil service.

928 F.2d at 842; *accord David v. United States*, 820 F.2d 1038, 1043 (9th Cir.1987).

 Blankenship also alleged a claim under 42 U.S.C. § 1985(2) which prohibits conspiracies "to deter, by force, intimidation, or threat, any party or witness in any court of the United States ... from testifying to any matter pending therein, freely, fully, and truthfully." Blankenship claimed that the defendants conspired to retaliate against her for giving testimony in the EEO hearing of a fellow employee.

We have previously held that "[a]llegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown the litigant was hampered in being able to present an effective case." *David v. United States*, 820 F.2d at 1040. Because Blankenship was not a party to the EEO proceeding, she can show no injury under § 1985(2). *Id.; accord Rutledge v. Arizona Board of Regents*, 859 F.2d 732, 735 (9th Cir.1988) (even if potential witnesses to plaintiff's federal action were intimidated, such intimidation had no effect on plaintiff's ability to present a case in federal court).

The judgment of the district court is AFFIRMED.