Andrea T. PAYNE, Plaintiff,

v.

United States Representative Gregory W. MEEKS and Employing Office of Representative Gregory Meeks, Defendants.

No. 01–CV–1532(ERK).

United States District Court, E.D. New York.

May 1, 2002.

David N. Mair, Kaiser Saurborn & Mair, New York City, for Plaintiff.

Alan Vinegrad, U.S. Atty., E.D.N.Y., Brooklyn, NY by Sandra L. Levy, Asst. U.S. Atty., for Defendant.

## MEMORANDUM & ORDER

KORMAN, Chief Judge.

Plaintiff, Andrea Payne, was employed as a case worker by defendant Gregory Meeks from March 1998 to October 2000. Meeks is the United States Representative for the 6th Congressional District of New York, which comprises parts of Queens County, New York. Payne alleges that at all times during her employment Meeks controlled the terms and conditions of her employment, and that she performed her job duties "in a superior manner." Defendant Employing Office of Representative Gregory Meeks (the "Employing Office") is the personal office of Meeks and qualifies as an "employing office" under § 101(9) of the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301(9).

On February 14, 2000, Payne was injured in a car accident. Due to her injuries, Payne took a medical leave from her job in Meeks's office from the date of the accident until July 10, 2000. While on leave she underwent massage therapy at Flowers Physical Therapy, a facility located in Queens County. The facility is owned by Neville Flowers, whose wife, Joan Flowers, is allegedly an important campaign supporter and fund raiser for Meeks. On April 20, 2000, Payne was sexually assaulted by a massage therapist at the facility. In May 2000, she commenced a civil action against, *inter alia,* Flowers Physical Therapy and Neville Flowers, seeking $25 million in damages.

On July 13, 2000, three days after Payne returned to work, the *Jamaica Times* published an article about her lawsuit against Flowers Physical Therapy and Neville Flowers, although the article did not identify Payne by name or state where she was employed. On the same date, Joan Flowers came to Meeks's office in an agitated state, complaining loudly about the contents of the article. On July 17, 2000,

Meeks held a staff meeting, attended by Payne, during which he stated that he had received several complaints about his staff, and that when he received a complaint from a campaign supporter he had to treat the matter seriously. Immediately after the staff meeting, Meeks met with Payne privately and informed her that he would not pay her for overtime work she had performed before taking medical leave.

Following the July 17, 2000 meetings, Meeks and certain other senior employees in his office allegedly began a campaign of retaliation against Payne for the filing of her lawsuit against Flowers Physical Therapy and Neville Flowers. The campaign included requiring Payne to work overtime without compensation, refusing to reimburse her for travel she was required to undertake in fulfillment of her job duties, and directing verbally-abusive language against her. On September 8, 2000, Payne filed a formal request for counseling with the congressional Office of Compliance pursuant to § 402 of the CAA, 2 U.S.C. § 1402, alleging that the Employing Office had "failed and refused to pay [her] for overtime hours worked." On October 10, 2000, Payne wrote to the Chair of the House Committee on Standards and Official Conduct, complaining about defendants' refusal to pay her for overtime and work-related travel. In the letter Payne stated that she believed that she was being retaliated against because of her lawsuit against Neville Flowers.

On October 23, 2000, Meeks terminated Payne's employment. Meeks allegedly informed Payne that her employment was being terminated not because of the quality of her work, but because he felt that she was unhappy at the job and that she was not "lending to the atmosphere that [he was] trying to create." On January 8, 2001, the Office of Compliance notified Payne of the end of the mediation period

provided for by § 404 of the CAA, 2 U.S.C. § 1404. On March 7, 2001, Payne filed this action, alleging that defendants had violated § 207 of the CAA, 2 U.S.C. § 1317, which prohibits retaliation against employees for the initiation of proceedings under the Act. Payne subsequently amended her complaint. Count I of the amended complaint alleges that the Employing Office violated Payne's rights under the CAA; Count II alleges that Meeks—acting in his individual capacity—violated her rights under the First Amendment by retaliating against her for the filing of her lawsuit against Flowers Physical Therapy and Neville Flowers. Meeks moves for dismissal of Count II for lack of subject-matter jurisdiction and for failure to state a claim.

## DISCUSSION

### I. *Subject–Matter Jurisdiction*

█ In Count II of the amended complaint Payne seeks to recover money damages from Meeks for the alleged violation of her rights under the First Amendment. Payne bases her claim on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which held that federal officers acting under color of law are liable for damages caused by their violation of the plaintiff's constitutional rights, *id.* at 397, 91 S.Ct. 1999. *Bivens* also noted, however, that the courts should decline to create a remedy for constitutional violations where there is an "explicit congressional declaration" that injured parties should be "remitted to another remedy, equally effective in the view of Congress," *id.,* or where there are "special factors counseling hesitation in the absence of affirmative action by Congress," *id.* at 396, 91 S.Ct. 1999. Meeks contends that the CAA constitutes a "special factor" precluding Payne's *Bivens* claim because: (i) the CAA provides a

remedy for her termination; and (ii) Congress intended that the remedial scheme established by the CAA be exclusive. (Def.'s Reply Mem. at 7–10.)

The CAA, enacted by Congress in 1995, makes 11 employment laws applicable to the legislative branch, and establishes administrative and judicial procedures for the resolution of disputes arising under the Act. *See* 2 U.S.C. §§ 1301–1438. The 11 laws made applicable to the legislative branch are: (1) the Fair Labors Standards Act of 1938; (2) Title VII of the Civil Rights Act of 1964; (3) the Americans with Disabilities Act of 1990; (4) the Age Discrimination in Employment Act of 1967; (5) the Family and Medical Leave Act of 1993; (6) the Occupational Safety and Health Act of 1970; (7) Chapter 71 (relating to Federal service labor-management relations) of Title 5; (8) the Employee Polygraph Protection Act of 1988; (9) the Worker Adjustment and Retraining Notification Act; (10) the Rehabilitation Act of 1973; and (11) Chapter 43 (relating to veterans' employment and reemployment) of Title 38. 2 U.S.C. § 1302(a). Significantly, however, the CAA does not provide any remedy for the violation of a congressional employee's constitutional rights.

Neither the text of the CAA nor its legislative history expressly provides that the remedial scheme established by the Act is exclusive. However, § 225(d)(1) of the CAA does provide that the Act establishes the exclusive procedure for the vindication of "the rights and protections afforded by this [Act]." 2 U.S.C. § 1361(d)(1). Section 413 further provides that "[t]he authorization to bring judicial proceedings under [the Act] shall not constitute a waiver of sovereign immunity for any other purpose...." 2 U.S.C. § 1413. In addition, § 408(b) provides that the defendant in any action arising under the Act "shall be the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b). Meeks argues that these provisions indicate that it was Congress's intent that the CAA establish the exclusive remedial scheme for congressional employment claims. (Def.'s Mem. at 8–10; Def.'s Reply Mem. at 9–10.)

The Supreme Court developed the "special factors" doctrine of *Bivens* in several cases predating the enactment of the CAA. In *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the plaintiff, former deputy administrative assistant to a Member of Congress, sought money damages under *Bivens* for the termination of her employment on the basis of sex in violation of her rights under the Due Process Clause of the Fifth Amendment. *Id.* at 231, 99 S.Ct. 2264. The defendant argued, *inter alia*, that the plaintiff's claim was precluded by § 717 of Title VII of the Civil Rights Act of 1964, which protected some federal employees from discrimination but not those such as the plaintiff who were not in the competitive service. *Id.* at 247, 99 S.Ct. 2264. The Court rejected the defendant's argument, holding that "[t]here is no evidence ... that Congress meant § 717 to foreclose alternative remedies available to those not covered by the statute," and concluded that the plaintiff did have a cause of action under the Fifth Amendment. *Id.* at 247–48, 99 S.Ct. 2264.

By contrast, in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Court refused to create a *Bivens* remedy for a First Amendment violation "aris[ing] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id.* at 368, 103 S.Ct. 2404. The plaintiff, an employee of the National Aeronautics and Space Administration,

was demoted, allegedly in violation of the First Amendment, for making public statements critical of the agency. *Id.* at 369–70, 103 S.Ct. 2404. He was reinstated through the administrative system established by Congress, with retroactive seniority and full backpay, but was not permitted to recover for any loss due to emotional distress or mental anguish, or for attorneys' fees. *Id.* at 371, 372, nn. 8–9, 103 S.Ct. 2404. Acknowledging that the "existing remedies do not provide complete relief for the plaintiff," *id.* at 388, 103 S.Ct. 2404, the Court refused to create a *Bivens* remedy on the ground that Congress's careful attention to the policy questions in the case—including its creation of "meaningful remedies" for agency employees whose constitutional rights have been violated—constituted a "special factor counseling hesitation," *id.* at 380–88, 91 S.Ct. 1999; *id.* at 390, 91 S.Ct. 1999 (Marshall, J., concurring).

In *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Court again refused to create a *Bivens* remedy in light of a comprehensive statutory scheme providing the plaintiffs with meaningful remedies for the harm resulting from the alleged violation of their constitutional rights. *Id.* at 428–29, 91 S.Ct. 1999. The plaintiffs, disability claimants under the Social Security Act, sought consequential damages under *Bivens* for the termination of their benefits in violation of the Due Process Clause of the Fifth Amendment. *Id.* at 418–19, 91 S.Ct. 1999. The Court began its discussion by observing that "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id.* at 421–22, 91 S.Ct. 1999 (citing *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (refusing to create *Bivens* action for enlisted military personnel who alleged they had been injured by unconstitutional actions of their superior officers and who had no remedy against Government itself)). The Court then observed that the plaintiffs could (and did) recover the wrongfully withheld benefits under the Social Security Act; their claim under *Bivens* was only for emotional distress and other hardships suffered as a result of the delay in their receipt of the benefits. *Id.* at 425–26, 91 S.Ct. 1999. Relying heavily on its decision in *Bush*, the Court concluded that "Congress . . . has addressed the problems created by [the] wrongful termination of disability benefits[,] . . . and we so no legal basis that would allow us to revise its decision." *Id.* at 429, 103 S.Ct. 2404.

In *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Court applied similar principles in holding that a federal employee's claim under the Back Pay Act was precluded by the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95–454, 92 Stat. 1111 et *seq.* (codified as amended in scattered sections of 5 U.S.C.). *Fausto*, 484 U.S. at 455, 108 S.Ct. 668. The plaintiff, a former employee of the Department of the Interior Fish and Wildlife Service, sought to recover backpay allegedly owed as a result of an unlawful suspension. *Id.* at 440, 108 S.Ct. 668. Because the plaintiff qualified as a member of the "excepted service" under the CSRA, he did not have the right under that statute to administrative or judicial review of the agency's denial of his claim. *Id.* at 443, 108 S.Ct. 668. The Court found that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action . . . with an integrated scheme . . . designed to balance the legitimate interests of various categories of federal employees with the needs of

sound and efficient administration." *Id.* at 444–45, 108 S.Ct. 668. It concluded:

> The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in [plaintiff's] service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review in the Claims Court under the Back Pay Act.

*Id.* at 455, 108 S.Ct. 668.

On the basis of *Bush, Chilicky* and *Fausto,* the courts of appeals have uniformly rejected the efforts of federal employees who lack any remedy under the CSRA to bring a *Bivens* action. *See, e.g., Zimbelman v. Savage,* 228 F.3d 367, 371 (4th Cir.2000) (plaintiffs, as employees of nonappropriated fund instrumentality, were not covered by remedial scheme of CSRA); *Blankenship v. McDonald,* 176 F.3d 1192, 1195 (9th Cir.1999) (plaintiff, as member of "excepted service" under CSRA, lacked any remedy under statute for adverse personnel action); *Lombardi v. Small Bus. Admin.,* 889 F.2d 959, 961 (10th Cir.1989) (same); *Lee v. Hughes,* 145 F.3d 1272, 1275–76 (11th Cir.1998) (same); *see also Spagnola v. Mathis,* 859 F.2d 223, 228–29 (D.C.Cir.1988) (en banc) (plaintiffs, as nonincumbent employees challenging denial of their promotions, were entitled to only limited administrative remedies under CSRA); *cf. Mitchum v. Hurt,* 73 F.3d 30, 35 (3d Cir.1995) (plaintiffs' claim for injunctive and declaratory relief for alleged constitutional violations was not precluded by CSRA). In *Blankenship,* a federal court reporter brought a *Bivens* action for the alleged violation of her rights under the First and Fifth Amendments. *Blankenship,* 176 F.3d at 1194–95. In affirming dismissal of the action, the Ninth Circuit observed:

> Because congressional action has not been inadvertent in providing certain remedies and denying others to judicial employees, we hold that the CSRA precludes a *Bivens* remedy in this case. Congress has given judicial employees certain employment benefits and remedies, such as back pay, severance pay, family and medical leave, and health and retirement benefits. Congress has withheld other benefits and remedies, such as review of adverse personnel decisions. This demonstrates that the lack of more complete remedies was not inadvertent.

*Id.* at 1195 (internal citations omitted).

Here, the comprehensive statutory scheme established by Congress to govern the rights of congressional employees clearly precludes Payne's *Bivens* claim for unconstitutional discharge. As an employee of a Member of Congress, Payne qualifies as an "employee" and as a member of the "excepted service" under the CSRA. *See* 5 U.S.C. §§ 2103(a), 2105(a)(1)(B). The CSRA grants congressional employees certain employment benefits, including retirement and health benefits and automatic life insurance coverage. *See* 5 U.S.C. chs. 83, 87, 89. The CAA, enacted by Congress in 1995, extends additional benefits and protections to congressional employees by making 11 employment laws applicable to the legislative branch, and by establishing administrative and judicial procedures for the resolution of disputes arising under the Act. *See* 2 U.S.C. §§ 1301–1438. Notably, the CAA entitles congressional employees to review of adverse personnel actions, a remedy previously available under the CSRA only to agency employees. *See* 2 U.S.C. §§ 1311, 1401–1416; 5 U.S.C. §§ 2301, 2302. However, unlike the CSRA, which entitles agency employees to review of adverse personnel actions taken in violation of their constitutional rights, *see* 5 U.S.C. §§ 2301(b)(2), 2302(b)(11), the

CAA grants no analogous remedy to congressional employees. Because Congress enacted the CAA against the background of the CSRA, its withholding from congressional employees of a remedy for constitutional violations cannot have been inadvertent. Congress's enactment of the CAA therefore only confirms the conclusion reached by several courts of appeals that federal employees are precluded from bringing *Bivens* actions for work-related grievances, even where the statutory scheme affords them no alternative remedy. *See, e.g., Blankenship*, 176 F.3d at 1195.

One additional consideration counsels against the creation of a *Bivens* remedy in this case. As the Supreme Court has observed, the structure of the statutory scheme governing the rights of federal employees would be turned upside down if employees lacking a remedy under the scheme were left free to pursue other avenues of relief. *Fausto*, 484 U.S. at 449, 108 S.Ct. 668. As the preceding discussion makes clear, the scheme established by the CSRA and the CAA creates a preferred position for certain categories of employees (*e.g.*, agency employees), entitling them to specified, but limited, administrative and judicial remedies that are not available to other, disfavored categories of employees (*e.g.*, congressional employees). This preference would be inverted, and congressional intent frustrated, if employees in the disfavored categories were permitted to bring *Bivens* actions unconstrained by the substantive and procedural limitations imposed by the statutory scheme. *See id.*

## II. *Failure to State a Claim*

 Meeks also contends that Payne fails to state a claim for a violation of her rights under the First Amendment because her lawsuit against Flowers Physical Therapy and Neville Flowers does not constitute speech on a matter of public concern. (Def.'s Mem. at 12–14; Def.'s Reply Mem. at 11–14.) The Supreme Court has held that the First Amendment "protects government employees from termination because of their speech on matters of public concern." *Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (§ 1983 action against state officials). However, where the primary aim of an employee's speech is to seek redress for a personal wrong, the speech is not protected by the First Amendment merely because its subject matter "may affect the public." *Tiltti v. Weise*, 155 F.3d 596, 603 (2d Cir.1998).

Two Second Circuit cases are particularly apposite here. In *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775 (2d Cir.1991), the Second Circuit held that a physician's complaints about various aspects of her hospital residency program were not, for First Amendment purposes, matters of public concern. *Id.* at 781. Although the quality of a physician-training program may affect the public, the Second Circuit concluded that the plaintiff "was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and development as a doctor." *Id.* Similarly, in *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134 (2d Cir.1993), the Second Circuit held that a public hospital employee's complaints about alleged sexual harassment by her supervisor were not protected by the First Amendment. *Id.* at 143. The Second Circuit observed:

> In the instant case there is no indication that the plaintiff wanted to debate issues of sex discrimination, that her suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort to correct allegedly

unlawful practices or to bring them to public attention.

*Id.* (internal citations and quotation marks omitted).

Here, Payne alleges that her employment was terminated because she sued Flowers Physical Therapy and Neville Flowers for injuries she sustained as a result of an alleged sexual assault. (According to the newspaper article in the *Jamaica Times,* a therapist at the facility attempted to insert his finger into Payne's vagina while massaging her leg.) Payne argues that her lawsuit implicates the First Amendment because it "raises the public's awareness of grave health, safety, and criminal issues." (Pl.'s Mem. at 8.) However, Payne's lawsuit focuses on the misconduct of one employee of Flowers Physical Therapy, and her primary aim is to obtain legal redress for the injury she suffered. She neither seeks relief against "pervasive or systemic misconduct by a public agency or public officials," nor is her lawsuit "part of an overall effort to correct allegedly unlawful practices or to bring them to public attention," *Saulpaugh,* 4 F.3d at 143. Under these circumstances, Payne's complaint fails to state a *Bivens* cause of action for the violation of her rights under the First Amendment.

## CONCLUSION

I grant Meeks's motion to dismiss Count II of the amended complaint for lack of subject-matter jurisdiction and for failure to state a claim.

**SO ORDERED.**