**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRISTIAN HEAD, M.D.,
*Plaintiff-Appellant*,

v.

ROBERT WILKIE, Secretary of
Department of Veterans Affairs;
DEAN NORMAN, M.D.; DONNA M.
BEITER, R. N. M.S.N.,
*Defendants-Appellees.*

No. 17-55942

D.C. No.
2:14-cv-01563-
SVW-PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted April 9, 2019
Pasadena, California

Filed September 5, 2019

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and Gary S. Katzmann,* Judge.

Opinion by Judge Paez

---

* The Honorable Gary S. Katzmann, Judge for the United States
Court of International Trade, sitting by designation.

## SUMMARY[**]

### Civil Rights

The panel reversed the district court's order granting summary judgment to defendants in an action brought by Christian Head, M.D., an African-American, board-certified head and neck surgeon who filed a lawsuit against his employer, the Secretary of the Department of Veterans Affairs and individual employees alleging, in part, that his supervisors violated 42 U.S.C. § 1985(2) by conspiring to deter him from testifying in a colleague's and his own civil rights cases.

The district court granted the defendants' motion for summary judgment on the § 1985(2) conspiracy claim, relying on *David v. United States*, 820 F.2d 1038 (9th Cir. 1987), which held that only parties to the initial case who were "hampered in being able to present an effective case" can show injury sufficient to bring a section 1985(2) claim.

The panel held that this court's decision in *David* was abrogated by *Haddle v. Garrison*, 525 U.S. 121, 126 (1998), to the extent that *David* limited section 1985(2) claims on statutory standing and injury grounds in conflict with *Haddle*. The panel held that a plaintiff asserting conspiracy under section 1985(2) need not show that the party in the original proceeding was hampered in presenting an effective case; interference with a witness's employment is a cognizable injury for section 1985(2) purposes. The panel

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

held that *David*'s limitations were irreconcilable with *Haddle*'s proclamation that intimidation or retaliation against witnesses in federal court proceedings constitute the "gist of the wrong" at which the statute is directed. The panel held that, as other sister circuits have recognized, this expanded view of section 1985(2) aligned with the Supreme Court's broad reading of the Reconstruction civil rights acts like section 1985.

The panel held that plaintiff's allegations that employees retaliated against him based on his testimony in a colleague's federal civil rights case and in his own case alleged a cognizable injury. The panel reversed the district court's order granting summary judgment to the defendant supervisors on plaintiff's section 1985(2) conspiracy claim and remanded for further proceedings consistent with the panel's opinion and with the concurrently filed unpublished memorandum, which addressed plaintiff's remaining employment discrimination claims.

## COUNSEL

Zane E. Hilton (argued), Lawrance A. Bohm, and Bradley J. Mancuso, Bohm Law Group Inc., Sacramento, California, for Plaintiff-Appellant.

Chung H. Han (argued), Special Assistant United States Attorney; David M. Harris, Chief, Civil Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

Christian Head, M.D., is an African-American, board-certified head and neck surgeon who held dual appointments for over a decade at the Department of Veterans Affairs ("VA") and University of California, Los Angeles ("UCLA"). In 2014, Head filed an employment discrimination lawsuit against the Secretary of the VA, alleging racial discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Head also sued his VA supervisors, Dr. Dean Norman and Donna Beiter, alleging that they violated 42 U.S.C. § 1985(2) by conspiring to deter him from testifying in a colleague's and his own civil rights cases. Relying on *David v. United States*, 820 F.2d 1038 (9th Cir. 1987), the district court granted the defendants' motion for summary judgment on the conspiracy claim based on *David*'s holding that only parties to the initial case who were "hampered in being able to present an effective case" can show injury sufficient to bring a section 1985(2) claim, *id*. at 1040.[1]

On appeal, Head argues that the district court erred by ignoring more recent case law addressing what type of injury suffices to bring a section 1985(2) claim. We have jurisdiction under 28 U.S.C. § 1291, and we agree that the district court erred in granting summary judgment on this

---

[1] The district court also denied Head's request for discovery under Federal Rule of Civil Procedure 56(d) and granted summary judgment to defendants on Head's Title VII claims of race-based discrimination, retaliation, and hostile work environment. We address Head's appeal of these claims in a concurrently filed memorandum disposition. In this opinion, we address only the conspiracy claim.

claim. Intervening higher authority from the Supreme Court has abrogated our holding in *David*. *See Haddle v. Garrison*, 525 U.S. 121, 126 (1998). Thus, we, as well as the district court, are not bound by *David* because it is "clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). We therefore reverse and remand for further proceedings consistent with this opinion.

## I.

Between 2002 and 2013, Head held dual appointments at the UCLA David Geffen School of Medicine as an Associate Professor in Residence of Head and Neck Surgery, as well as at the VA Greater Los Angeles Healthcare system ("GLAHS") as an attending surgeon. Head alleges that over his time at both institutions, he endured discrimination, retaliation, and harassment on the basis of his race and his participation in various internal investigations and Equal Employment Opportunity ("EEO") cases. He filed a total of three EEO complaints against the VA.[2]

Head filed his first EEO complaint in 2004 against his then-supervisor, Dr. Marilene Wang, alleging reprisal and harassment on the basis of race. He filed his second EEO complaint in 2008 against a later supervisor, Dr. Matthias Stelzner, alleging reprisal, harassment, and hostile work environment. A 2008 internal investigation concluded that Head was treated differently from others similarly situated in his department, but could not determine the motivations behind that disparity. In 2009, as a result of the internal

---

[2] Head also filed four complaints against UCLA with the California Department of Fair Employment and Housing, and settled a lawsuit against UCLA in 2014 for $4.5 million.

investigation, Head was reassigned to work in the Office of the Chief of Staff led by Norman, who reported to the GLAHS director, Beiter. This led to Head's third EEO complaint, filed in October 2011, which is the subject of this lawsuit.

In the 2011 EEO complaint, Head identified ten incidents of harassment and reprisal, including an unwarranted pay cut and incidents of being accused of absence without leave. At the time, Head was participating as a witness in the lawsuit of Dr. Jasmine Bowers, his former colleague, against the VA. Dr. Bowers filed a lawsuit alleging racial discrimination against a VA-affiliated hospital where Wang, Head's former supervisor, was on the peer-review panel. Head was deposed as part of the EEO investigation of Bowers's complaint and as part of Bowers's federal lawsuit. During the latter deposition, Head stated that he believed the VA had escalated tracking of his time and was "super-auditing" him in retaliation for testifying on behalf of Bowers and against Wang. In his 2011 EEO complaint, Head alleged that he faced a hostile work environment at the VA because of his testimony in Bowers's case.

After completing the administrative process, Head filed a complaint in district court in March 2014, initiating this lawsuit against the VA. Separately, on July 8, 2014, Head testified before the House of Representatives Committee on Veterans Affairs on a panel entitled "VA Whistleblowers: Exposing Inadequate Service Provided to Veterans and Ensuring Appropriate Accountability." Head testified about a range of topics including racial discrimination he faced within the institution, retaliation for his participation in a timecard fraud investigation against Wang, and retaliation for his participation in the Bowers case. A few weeks after

Head's congressional testimony, he filed a first amended complaint, which added Beiter and Norman, individually, as defendants.

At this time, Beiter was Head's second-in-line supervisor after Norman. She watched Head's congressional testimony on C-Span. Shortly after his testimony, Beiter decided to remove Head from her supervisory chain of command because she learned that the VA Administrative Investigation Board would be initiating an investigation of Head's allegations. She spoke to her supervisor, and Head was re-assigned to report to a different chief of staff rather than to Norman and Beiter. Additionally, Head's office was relocated from the Chief of Staff executive suite to an office on the fourth floor of the hospital. Beiter avers that she made these decisions without knowing that Head had personally named her in this lawsuit.

After two rounds of motions to dismiss under Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6), Head filed the operative second amended complaint in October 2014. Head alleged that Beiter and Norman conspired to deter a party or witness, in violation of 42 U.S.C. § 1985(2). Head also alleged three claims under Title VII against the VA: racial discrimination in violation of 42 U.S.C. § 2000e-2; retaliation/reprisal in violation of 42 U.S.C. § 2000e-3(a); and hostile work environment in violation of 42 U.S.C. § 2000e-2. In addition to the ten acts described in his 2011 EEO complaint, Head alleged nine other acts of harassment and retaliation that he experienced in 2014, including having sick leave and vacation time erroneously taken away from him, and having his patients reassigned to Wang.

The VA filed a third motion to dismiss, which the district court denied, but the court then ordered a briefing schedule for a motion for summary judgment. All defendants filed a

motion for summary judgment. Head opposed the motion and requested discovery under Rule 56(d). Relevant here, the district court granted summary judgment for Norman and Beiter on the section 1985(2) conspiracy claim.[3] Head timely appealed.

## II.

We review de novo the grant of a motion for summary judgment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). The moving party is entitled to summary judgment only where, drawing all reasonable inferences supported by the evidence in favor of the nonmoving party, no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute of material fact exists where "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III.

Section 1985(2), in relevant part, proscribes conspiracies "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified." If one or more persons engaged in such a conspiracy "do, or cause to be done, any act in furtherance of the object of such conspiracy, . . . the party so injured . . . may have an action for the recovery of damages

---

[3] *See supra* at 4 n.1.

occasioned by such an injury . . . against any one or more of the conspirators." 42 U.S.C. § 1985(3).

Head alleged that Beiter and Norman conspired to deter him from testifying in the case of his former colleague, Bowers, and in his own case. The district court applied the test we formulated in *David*, stating that to establish a claim under section 1985(2), the plaintiff must show "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff." 820 F.2d at 1040. The district court noted *David*'s test for injury, observing that claims of witness intimidation "will not suffice for a cause of action unless it can be shown that the *litigant* was hampered in being able to present an effective case." *Id*.; *see Blankenship v. McDonald*, 176 F.3d 1192, 1196 (9th Cir. 1999) (applying test from *David* to hold that plaintiff failed to state a claim where she alleged that she was prevented from testifying in an EEO proceeding to which she was not a party). Applying *David*'s test, the district court then rejected Head's argument that he could assert a section 1985(2) claim based on the alleged interference with his testimony in Bowers's case. Lastly, the district court concluded that Head failed to show injury from any alleged interference in his own pending lawsuit because he did not present any evidence that he was hampered in his ability to present an effective case.

We must decide whether *David* still controls over claims under section 1985(2), especially in light of the Supreme Court's subsequent decision in *Haddle*. No prior decision from our court has addressed explicitly the continuing viability of *David*'s holding in light of *Haddle*. *See Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012); *Blankenship*, 176 F.3d at 1196. Under *Miller*, we are

obliged to reexamine normally controlling circuit precedent in the face of an intervening Supreme Court decision. 335 F.3d at 892.

## A.

In *Haddle*, the Supreme Court addressed a circuit split regarding the type of injury that is cognizable under section 1985(2). 525 U.S. at 124. Haddle was an at-will employee of an employer whose officers were charged with Medicare fraud. *Id*. at 122–23. He alleged that those officers conspired to have him fired from his job in retaliation for his cooperation with a federal grand jury subpoena in those criminal proceedings. *Id*. at 123. He then sued for damages under section 1985(2). *Id*. The Eleventh Circuit affirmed the district court's dismissal of Haddle's case on the basis of circuit precedent holding that an at-will employee had no constitutionally protected interest in continued employment, and therefore could not assert an injury under the statute. *Id*. at 123–24.

The Supreme Court reversed, holding that termination from at-will employment could constitute harm to "person or property" for purposes of section 1985(2), even though at-will employment is not "property" for purposes of the due process clause. *Id*. at 125–26 ("We disagree with the Eleventh Circuit's conclusion that the petitioner must suffer an injury to a 'constitutionally protected property interest' to state a claim for damages under § 1985(2)."). The Court pointed out that the terms "injured in his person or property" in the statute refer to traditional principles of tort law, and that interference with contractual relations like at-will employment has long been a compensable injury under tort law. *Id*. at 127. Thus, the Court held that the loss of at-will employment by a non-party to the underlying judicial proceeding—the federal criminal prosecution against the

company's officers—could establish the kind of injury required to state a claim under section 1985(2). *Id*. at 126–27.

Although the Court stated that it expressed no opinion regarding the officers' argument that only parties, and not witnesses, may bring section 1985(2) claims, *id*. at 125 n.3, the reasoning behind *Haddle* is clearly irreconcilable with our reasoning in *David*. As a reminder, we held prior to *Haddle* that only a party to the underlying litigation can demonstrate sufficient injury to state a claim under section 1985(2). *David*, 820 F.2d at 1040. Our reasoning was sparse but unequivocal:

> [The plaintiff] David has not alleged how *she* has been injured by her testimony in [her coworker's case] or her failure to appear in court. Allegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown the *litigant* was hampered in being able to present an effective case. Since David has not shown she was a party to the actions in which she was intimidated, she can show no injury under § 1985(2).

*Id*. (internal citation omitted).

Conversely, the Supreme Court later held in *Haddle* that interference with a plaintiff's employment—which has no relationship to or impact on the underlying litigation for which he was subpoenaed to testify—is a cognizable injury under section 1985(2). 525 U.S. at 126. The Court reached this conclusion after explaining that "[t]he gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or *retaliation against witnesses* in federal-

court proceedings." *Id*. at 125 (emphasis added). By recognizing a witness's injury as cognizable because of the statute's goal of guarding against undue influence in court proceedings, *Haddle* has logically abrogated *David*'s limitations on the type of injury that suffices for a claim under section 1985(2) and that one must be a party to the underlying case to suffer cognizable injury.[4]

## B.

While *David* appears plainly irreconcilable with *Haddle*, we recognize that two Ninth Circuit opinions post-*Haddle* continued to apply the *David* rule. *See Mirmehdi*, 689 F.3d at 983; *Blankenship*, 176 F.3d at 1196. In neither case, however, did we discuss or even acknowledge the Supreme Court's decision in *Haddle*. In fact, we have located no case

---

[4] A few of our sister circuits have framed this question of what injury suffices under section 1985(2) as one of "standing," focusing on the scope of "*the party* so injured" in the statute. *See Heffernan v. Hunter*, 189 F.3d 405, 410 (3d Cir. 1999); *see also Chavis v. Clayton Cty. Sch. Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002) (citing *Heffernan* with approval). Head's briefing also borrows this standing framework. It is therefore worth clarifying how "standing" is relevant to *David* and *Haddle*'s holdings. There is a difference between statutory standing and constitutional standing. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[L]ack of *statutory* standing requires dismissal for failure to state a claim [under Rule 12(b)(6), [whereas] lack of *Article III* [constitutional] standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Id*. (citing *Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1087 n.6 (9th Cir. 2011)). Both *David* and *Haddle* addressed what type of injury is sufficient to state a claim for damages under section 1985(2). *See Haddle*, 525 U.S. at 492; *David*, 820 F.3d at 1040. By extension, they both also address statutory standing to the extent we must consider the identity of "*the party* so injured" under the same statute.

from our circuit, published or otherwise, that has cited *Haddle*.

We faced a similar scenario in *Galbraith v. Cty. of Santa Clara*, when determining the proper pleading standard for improper motive in cases under 42 U.S.C. § 1983. 307 F.3d 1119, 1121 (9th Cir. 2002). We concluded that our earlier decisions, *Branch v. Tunnell*, 937 F.2d 1382 (9th Cir. 1991) ("*Branch I*") and *Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) ("*Branch II*"), were no longer good law as a result of subsequent Supreme Court decisions in *Crawford-El v. Britton*, 523 U.S. 574 (1998) and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). *Galbraith*, 307 F.3d at 1123–26. We recognized that cases after *Crawford-El* continued to cite *Branch I* and *Branch II*, but stressed that "*none has expressly addressed the continuing viability of* Branch'*s* heightened pleading standard in light of *Crawford-El* and *Swierkiewicz*." *Id.* at 1125–26. Because our rule in *Branch I* and *II* was inconsistent with the federal system of notice pleading under Rule 8 as explained by the Supreme Court in *Swierkiewicz*, we "[held] that *Branch* has been overruled by subsequent Supreme Court authority." *Id.* at 1126.

Like the situation in *Galbraith*, neither *Mirmehdi* nor *Blankenship* has expressly addressed the continuing viability of *David*'s holding regarding cognizable injury in light of *Haddle*. *See id.* at 1126. Conversely, other circuits that have expressly addressed section 1985(2) claims in light of *Haddle* have uniformly recognized that the statute encompasses injury to witnesses who were not parties in the underlying judicial proceedings. *See L.L. Nelson Enter., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 812 n.3 (8th Cir. 2012) (noting that the statute forbids conspiracies to injure a witness on account of his having so attended or testified); *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145,

149 (5th Cir. 2010) (noting "[s]ubsection (2) concerns conspiracies directed at the right of participation in federal judicial proceedings"); *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc) (affirming denial of summary judgment for defendants where plaintiffs alleged conspiracy because of their testimony as expert witnesses in judicial proceedings); *O'Neal v. Garrison*, 263 F.3d 1317, 1318, 1321–22 (11th Cir. 2001) (reversing summary judgment for defendants where plaintiff alleged retaliation for testifying before a grand jury and agreeing to testify at criminal trial of defendants).**[5]**

Moreover, at least three of our sister circuits have explicitly held that non-parties may bring section 1985(2) claims. *See Hogan v. Winder*, 762 F.3d 1096, 1113–14 (10th Cir. 2014) (citing with approval *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994), which held before *Haddle* that non-litigants can bring section 1985(2) claims); *Chavis*, 300 F.3d at 1292–93 (holding that section 1985(2) claims are not limited to "only a person who was a named party in an earlier case"); *Heffernan*, 189 F.3d at 410 (agreeing with *Brever* that a witness or juror may bring a claim under section 1985(2)).

Thus, this is our first occasion to address the impact of *Haddle* on our section 1985(2) case law.  We hold that *David*'s injury limitations no longer apply.  Non-parties to the original judicial proceeding may pursue section 1985(2) claims.  *See Haddle*, 525 U.S. at 126; *see also Heffernan*,

---

**[5]** The only exception is the Second Circuit in *Morris v. Lindau*, but there, the plaintiffs asserting section 1985(2) conspiracy claims were also the parties in the original federal civil rights litigation.  196 F.3d 102, 116–17 (2d Cir. 1999).  Thus, there was no occasion to address the injury of non-parties.

189 F.3d at 410. A plaintiff asserting conspiracy under section 1985(2) need not show that the party in the original proceeding was hampered in presenting an effective case; interference with a witness's employment is a cognizable injury for section 1985(2) purposes. *Haddle*, 525 U.S. at 126–27.

## C.

In light of *Haddle*, the district court's reasons for granting summary judgment to Norman and Beiter on Head's conspiracy claim are no longer viable. Head has alleged that VA employees retaliated against him based on his testimony in the Bowers federal civil rights case and in his own case. We hold that he has alleged a cognizable injury and may pursue that claim. Head can state a claim even if he cannot show that either he or Bowers were hampered in being able to present an effective case. We therefore reverse the district court's grant of summary judgment on this claim. In so doing we express no views as to the merits of Head's section 1985(2) conspiracy claim.

## IV.

In summary, *David v. United States*, 820 F.2d 1038 (9th Cir. 1987), has been abrogated by subsequent controlling Supreme Court authority to the extent that it limits section 1985(2) claims on statutory standing and injury grounds in conflict with *Haddle*. *David*'s limitations are irreconcilable with *Haddle*'s proclamation that intimidation or retaliation against witnesses in federal court proceedings constitute the "gist of the wrong" at which the statute is directed. 525 U.S. at 125. And, as our sister circuits have recognized, this expanded view of section 1985(2) aligns with the Supreme Court's broad reading of the Reconstruction civil rights acts like section 1985. *See Chavis*, 300 F.3d at 1292 (citing

*Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971)); *Heffernan*, 189 F.3d at 409–10.

The district court's order granting summary judgment to Norman and Beiter on Head's section 1985(2) conspiracy claim is therefore reversed and the case is remanded for further proceedings consistent with this opinion and with the concurrently filed memorandum addressing Head's remaining claims.

Head shall recover his costs on appeal.

**REVERSED and REMANDED.**